[No. 23831. Department One. September 20, 1932.]

C. O. CARLSON *et al., Respondents,* v. THOMAS BOGLE *et al., Appellants.*[1]

[1]Reported in 14 P. (2d) 42.

*Clark W. Adams* and *A. Emerson Cross,* for appellants.

*L. B. Donley* and *A. E. Graham,* for respondents.

PARKER, J.—The plaintiffs, Carlson and savings association, commenced this action in the superior court for Grays Harbor county seeking a decree setting aside a transfer of one of its notes and mortgages to the defendants Bogle, Murch, Olson and Gylling, in payment of the withdrawals of the amounts of their shares in the association, in violation, as it is claimed, of the rights of Carlson and the rights of the association as representing certain of its shareholders who have given notice of withdrawal demands. The cause, being of equitable cognizance, proceeded to trial in that court sitting without a jury, and resulted in a decree awarding to the plaintiff the relief prayed for, from which the defendants have appealed to this court.

The controlling facts are not in dispute. They may be sufficiently summarized from the trial court's findings, as follows:

The association has for many years past been, and now is, a duly organized savings and loan association under the laws of this state, maintaining its principal place of business in Aberdeen. During a period of more than one year prior to February, 1931, the plaintiff Carlson has been and now is the owner of fully paid up shares in the association amounting to $11,300. On February 14, 1931, the association adopted the plan of requiring notices of demand withdrawals of shareholders to be filed with it, and of paying such demands in the order of their filing, as the finances of the association would permit such withdrawals to be made.

Thereafter, such demand notices were filed by certain of the shareholders.

On February 17, 1931, Carlson filed his notice of demand for the withdrawal of the amount of all of his shares. This notice was the three hundred and seventy-fifth in order of the dates of the withdrawal demand notices filed up to that time. Up to the time of the trial of this cause, many of those withdrawal demands, including that of Carlson, had not been paid. On August 3, 1931, the defendants were owners of shares in the association in amounts, as follows: Bogle, $5,199; Murch, $4,635; Olson, $5,000; Gylling, $4,500. No notice of demand was filed for the withdrawal of any amount of any of those shares up to the time of the trial of this cause.

On August 3, 1931, the then officers of the association assigned to the Grays Harbor National Bank, without recourse, in trust for the defendants Bogle, Murch, Olson and Gylling, a note and mortgage owned by it, in satisfaction of withdrawals of the amounts of their respective shares in the association. They then assigned and surrendered their respective shares to the association, which was the only consideration, passing from them or either of them to the association, for the note and mortgage assigned to the bank for them. The balance then owing upon the note and mortgage was approximately the same as the aggregate amount of the shares so assigned and surrendered to the association. The note and mortgage were acquired by the association, in due course of its business, as evidence of a loan made by it to the payor and mortgagor in August, 1929. The loan then had several years to run, and bore interest at the rate of six and one-half per cent per annum. There has been no default in payments of interest or installments of the principal; nor

is there any likelihood of there being any such default in the future.

This action was commenced on October 5, 1931. It proceeded to trial in due course, the decree being rendered February 5, 1932, awarding to the plaintiffs relief as prayed for, setting aside the assignment of the note and mortgage, and providing for the putting of the parties in the same position they were in before that assignment was made, including an accounting with reference to the interest paid upon the note to the defendants or to the bank for them, and with reference to dividends which would have been payable upon the shares of the defendants in the association had they continued to assume ownership thereof. By consent of all parties, the bank was dismissed out of the action soon after it was commenced, the bank having assigned the note and mortgage to the defendants Bogle, Murch, Olson and Gylling.

It is first contended that there is a misjoinder of parties and causes of action. It may be that there was a time in the history of our jurisprudence when this contention would have been considered as well grounded; but however that may be, it seems plain to us that this contention is now effectually answered in the negative by the language of Rule of Practice II, subdivision 1, adopted by this court January 14, 1927, found in 159 Wash. lvii (Rem. 1927 Sup., § 308-2), reading as follows:

"All persons may be joined in one action, as plaintiffs, in whom any right to relief in respect of, or arising out of, the same transaction or series of transactions, is alleged to exist, whether jointly, severally or in the alternative, where, if such persons brought separate actions any common question of law or fact would arise; *Provided,* That if upon the application of any party, it shall appear that such joinder would embarrass or delay the trial of the action, the court may

order separate trials or make such other order as may be expedient, and judgment may be given for such one or more of the plaintiffs as may be found to be entitled to relief, for the relief to which he or they may be entitled.''

We conclude that there was no misjoinder of parties or causes of action working to the prejudice of any of the parties to this cause.

■ Our statutory provisions governing withdrawal rights of shareholders are found in Rem. Comp. Stat., § 3731, reading as follows:

''Shares shall not be withdrawn until after a lapse of three months from the time of issuance of such shares and not then except at the option of the association; but *shares may be withdrawn at any time after one year from the time of issuance.* The withdrawing shareholder shall be paid the amount of the withdrawal value of the shares, as shown by the last prior distribution of profits together with all the dues paid thereon since such distribution; Provided, that upon withdrawal of shares pledged to the association for a stock loan, or stock loans, the association shall first deduct therefrom the indebtedness due the association. *Withdrawals shall be paid in the order of their filing, except as hereinafter provided,* and it shall be the duty of the secretary or other officer discharging such duties to enter upon each notice the order and date of such filing. Except as hereinafter provided, not more than two-thirds of the receipts of the association in any month shall be applied to the payment of withdrawals and matured shares without the consent of the board of directors. Whenever an application for withdrawal shall have been on file or the payment of matured shares demanded and either shall have remained unpaid for a period of six months, all the receipts of the association in any month from dues, loans repaid, and the proceeds of all other investments, shall, after the payment of expenses and general indebtedness, be applied toward the payment of withdrawals and matured stock; and *the board of directors, or the state auditor,*

*in his discretion, may direct that withdrawals be paid
upon a ratable and proportionate basis.* After filing
the notice of withdrawal provided herein, the with-
drawing member shall be entitled to the dividends
credited to the same class of shares, until the final pay-
ment of his shares is made; and membership in the
association shall remain unimpaired so long as any
accumulation remains to his credit.''

We have italicized the portions of this section to be
particularly noticed. Here, we find the shareholder's
withdrawal right accorded to him in the order of the
filing of his demand notice therefor with such demands
by other shareholders, except as otherwise therein pro-
vided; which exception does not exist with reference
to the withdrawal rights here in question. Therefore,
Carlson has the right of withdrawal under the exist-
ing conditions of the association's affairs superior to
the withdrawal rights of any of the defendants, none
of whom have filed any demand notice of withdrawal.

It seems to us plain that the defendants can no more
be accorded the right of withdrawal of the amounts of
their shares by taking payments therefor in the form
of the note and mortgage assigned to them than they
can be accorded the right of withdrawing the amount
of their shares by taking cash payment therefor. They
are, it seems to us, in legal effect, exactly in the posi-
tion as if they or someone else had purchased the note
and mortgage for cash, so paid the purchase price
thereof to the association, and the association had in
turn paid the money to them in the amounts of their
shares. Clearly, this could not lawfully be done. It
cannot indirectly be done in the manner attempted by
the officers of the association and the defendants.

Some contention is made in behalf of the defendants
rested upon the following provision of Rem. Comp.
Stat., § 3725, as follows:

534

"Any mortgage may be surrendered to the association upon filing with the state auditor an affidavit sworn to by the president and secretary of the association owning the same, showing to the satisfaction of the state auditor that it would be to the advantage of the association to assign the said mortgage without recourse, or that such mortgage is in default and that it is withdrawn for the purpose of foreclosure."

In this connection, it is to be noted that Rem. Comp. Stat., § 3724, provides for the depositing of the securities of the savings and loan association with the state auditor for safe keeping. It is true that § 3725 does inferentially point to the right of the association to assign any of its mortgages when it is to its advantage to do so; but this is far from impairing in any manner the right of a shareholder to withdraw the amount of his shares in the order of the filing of his notice of demand therefor.

As we view this controversy upon the record before us, it seems quite plain to us that the judgment of the trial court must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, STEINERT, and HERMAN, JJ., concur.