[No. 34034. Department Two. August 22, 1957.]

PATRICK A. KANE *et al.*, *Respondents and Cross-appellants,* v. LEE KLOS *et al.*, *Appellants.*[1]

[1]Reported in 314 P. (2d) 672.

*Edward J. Crowley*, for appellants.

*John E. Snoddy*, for respondents and cross-appellants.

FOSTER, J.—Appellants, who were defendants below and are subsequently so identified herein, appeal from a final judgment for the return and cancellation of corporate shares and money unlawfully and fraudulently obtained, and from the dismissal of their cross-complaint for libel and slander, and make seventy-one assignments of error. Respondents and cross-appellants, who were plaintiffs below and are subsequently so identified herein, cross-appeal upon the amount of the recovery and the number of voting shares of the common stock ordered returned for cancellation.

Plaintiff's first cause of action is a derivative one in which the corporation, the Columbia Pacific Company, is also a plaintiff. It seeks the return and cancellation of 3,800 shares of the voting common stock of said corporation, and is joined with an assigned claim to recover a secret profit by defendants in the fraudulent sale to an elderly stockholder of the building in which the company had its office.

The judgment orders the return and cancellation of 2,800 voting shares of the common stock standing in the name of the defendant Lee Klos. On the assigned claim, the court found the secret profit to be $15,200, but granted judgment for only $12,495.10.

The cross-complaint was dismissed because the court found the statements complained of were true. They are:

1. "Klos has not handled this concern in an honest and up-right manner;"

2. The other allegation was that plaintiffs' assignor, Schroeder, said of the defendant, "Mr. Klos is a thief and a crook."

The court found that the pleaded words were not used, but that others of a similar import were.

The gist of the cross-appeal is that plaintiffs are entitled to the return and cancellation of 3,800 voting shares of the common stock instead of 2,800, and to the full amount of the secret profit.

The findings of fact are supported by overwhelming evidence which presents a very sordid tale, indeed, of a fiduciary's misconduct. While without means, defendant Lee Klos, nevertheless, undertook the promotion of a holding company designed to own and operate a life insurance company. Ten other persons joined him in incorporating the Columbia Pacific Company. At the outset, the incorporators agreed that 20,000 out of 50,000 voting shares of the common stock would be divided equally between them. Initially, in May of 1953, Klos was elected president, and served until January of 1955, when he resigned.

During the interval between October 21, 1953, when a directors' meeting was held, until December 1, 1954, when the next meeting was held, defendant Lee Klos completely dominated the affairs and activities of the holding company. During that period, in complete violation of all fiduciary duties, without even notice to the directors or stockholders and for the sole purpose of controlling and dominating the company, Klos issued to himself and wife 6,000[2] shares of the voting stock.

At the December 1, 1954, meeting, Klos claims that he exhibited a paper indicating 7,000 shares of the voting stock stood in the name of himself and wife. While many specific actions taken during the interval were ratified and approved,

---

[2]Only 3,800 shares are now involved.

a blanket catchall resolution, ratifying all of the actions taken during the period, was also adopted, but there was no specific disclosure that Klos had transferred to himself 6,000 voting shares. Nevertheless, Klos claims this to be a ratification of his actions.

In the beginning, the agreement of the original incorporators was that 20,000 shares of the voting stock would be divided equally between them. Four remaining directors, in November, 1953, attempted a modification of that agreement, which, the trial court in its memorandum opinion appropriately said, had two purposes: first, to release the withdrawing incorporators from liability; and second, to enable the remaining stockholders to proceed. The trial court further commented that "Any overreaching by any one of the original founders would jeopardize the rights of all others remaining," and that "Good faith dealing would require such a pro ration of the gravy stock of the corporation unless altered by lawful action of the board of directors." The other stockholders, likewise, have rights.

In the summer of 1954, the company rented office space in a Spokane building. For a consideration of $10, Klos then procured some sort of an option for the purchase thereof, but the option was never produced. A company salesman, who was requested by Klos to find a purchaser for the building at $56,400, reported the situation to Mr. J. P. Schroeder, of Wilson Creek, a stockholder with more than $30,000 invested in the company.

Thereafter, Klos represented to Schroeder, a man ninety years of age, that he, Klos, would like to buy the building himself except that it would not look good for the president of the company to own the building in which the company's office was located. He fixed the price at $56,200, and said that the sale required prompt consummation because of an impending advance in price. He withheld from Schroeder his agreement to purchase the property for $40,000, and that he had only $46 in his bank account, and specifically did not claim to own the property himself, but represented that he would purchase it for Schoeder.

The actual price paid was $40,000, all of which came from Schroeder, whose checks to Klos are dated September 30, 1954, for $10,000; October 7, 1954, for $38,000; and October 18, 1954, for $7,200. Klos paid Graham $10,000 on October 14, 1954, and on October 18, 1954, $23,023.

Significantly, the trial court said:

"At the time of negotiations for the sale of the building to J. P. Schroeder, the evidence discloses that Lee Klos had a total sum of $46.00 in his bank account. And yet he has assumed the position that the sale of the building now occupied by the insurance company was his private affair and had nothing to do with him in his capacity as president of the Columbia Pacific Company."

The case for the defendants depends exclusively upon the testimony of the defendant Klos himself, who was completely discredited and the trial court specifically so found. Indeed, it could not do otherwise. The concluding paragraph of finding of fact No. 10 is:

"That Lee Klos is a person of amoral character and a person without a sense of moral responsibility; that said Lee Klos has failed in any sense to meet the burden of proof which equity places upon an officer of the company to prove the good faith of the transaction."

Moreover, Klos himself sued for libel and slander, but the court found that the charges of dishonesty against him were true.

The facts were withheld from the company's attorney, Mr. Robert Dellwo, whose forthright testimony is, indeed, convincing. Neither Klos nor the owner disclosed the amount of the purchase price to Mr. Dellwo; but Klos, moreover, swore the owner to secrecy. Schroeder did not learn the facts until they were disclosed by the investigation of his attorney, Mr. Clifford O. Moe. Upon completion of the investigation, Mr. Moe demanded restitution from Klos, which he refused.

Although the entire purchase price was paid in 1954, Klos did not report it on his income tax returns for that year, but in the year following, claimed a long-term capital gain on the sale of the property. The court, by its judgment, re-

quired this faithless fiduciary to disgorge his ill-gotten gains, and he appeals.

■ We are met at the threshold with the contention of the defendants that appeals in equitable proceedings are tried *de novo*. That was so from 1893 to 1951, but it is no longer the rule. Since the effective date, January 2, 1951, of Rule on Appeal 43, 34A Wn. (2d) 47, as amended, there is no difference between appeals in actions at law and in equitable proceedings. *In re Mayer's Estate*, 43 Wn. (2d) 258, 260 P. (2d) 888; *Wygal v. Kilwein*, 41 Wn. (2d) 281, 248 P. (2d) 893; *Simpson v. Hutchings*, 41 Wn. (2d) 287, 248 P. (2d) 572; *In re Boundy's Estate*, 40 Wn. (2d) 203, 242 P. (2d) 165; *Hubbell v. Ward*, 40 Wn. (2d) 779, 246 P. (2d) 468.

But this is not important because no other findings are possible.

■ Although it comes with ill grace, defendants urge upon us the claim that the corporation both waived and ratified the breaches of Klos' fiduciary duties, but this could only be done after a full and complete disclosure of all of the facts and circumstances by the fiduciary and an intentional relinquishment by the corporation of its rights.

■ By RCW 23.36.080, corporate officers and directors are fiduciaries. Cardozo's language in *Meinhard v. Salmon*, 249 N. Y. 458, 164 N.E. 545, defining fiduciary duties has become classic. He said:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions (*Wendt v. Fischer*, 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

■ The duty of the corporate fiduciary is no less and was recently stated by the appellate division of the New Jersey superior court in *Daloisio v. Peninsula Land Co.*, 43 N. J. Super. Ct. 79, 127 A. (2d) 885, 891:

"Directors, when elected to office, become trustees of the entire body of corporate owners. They owe loyalty not only to the majority stockholders, or to the minority, but to all of them, represented by the corporate entity. To disregard the rights of either group, or of the corporation as such—even for a moment—is a violation of their fiduciary obligation."

■ The prerequisites to ratification are nowhere better stated than in *Durfee v. Durfee & Canning, Inc.*, 323 Mass. 187, 80 N.E. (2d) 522:

"For 'a cestui que trust to "ratify" or confirm a breach of trust, he must be apprised of all the material facts and as well of their legal effect. No half-hearted disclosure or partial discovery is sufficient in either respect. The trustee's duty of disclosure is not discharged by leaving the cestui to draw doubtful inferences, conclusions and suspicions.' "

■ Here the facts were learned only after investigation by Mr. Dellwo, the company's attorney. Concealment rather than disclosure was the keynote of the defendants' conduct. There was no waiver, much less ratification.

■ Appellants argue that the assignment by Schroeder of his claim against Klos is invalid because it was not signed by his wife. The contention is that it involves real property. The argument falls of its own weight for the judgment is for money only. By statute, Rem. Rev. Stat., § 6892 [*cf.* RCW 26.16.030], the husband has both the management and control of the community personal property.

■ The claim is made that the right to recover the money, fraudulently obtained by Klos, cannot be assigned. The law is otherwise. *Cooper v. Runnels*, 48 Wn. (2d) 108, 291 P. (2d) 657.

■ A year after defendant Klos unlawfully transferred to himself the stock in question, plaintiff Kane released the Columbia Pacific Company from any claim he had for additional stock. From this, defendant argues that he, likewise,

was released because the release of one joint tort-feasor releases all; but the argument is devastated by the fact that only Klos breached his fiduciary obligations. He was without confederates. He acted alone. There were no joint tort-feasors.

Defendants urge that the derivative action for the return and cancellation of the stock unlawfully issued to Klos cannot be joined with the assigned claim to recover the secret profit made by the defendant Klos from the sale of the building to the aged stockholder Schoeder. Ordinarily, misjoinder is waived by pleading over and going to trial; but the defendants here did even more by cross-complaining for libel and slander. If the plaintiffs' cause of action could not be joined, certainly the defendants could not cross-complain in the same case for libel and slander. The error, if any, was waived.

The trial court thought that all of the claims arose out of the same series of transactions; and certainly this is true with respect to the plaintiffs' two causes of action. In order to pay for the stock illegally issued to him, defendant Klos found the secret profit indispensable, and at least $6,200 of it was traced directly to the payment for the stock illegally transferred to defendant Klos.

While Rule of Pleading, Practice and Procedure 2, 34A Wn. (2d) 68, deals only with joinder of parties, it was applied to joinder of claims in *Seventh Elect Church in Israel v. First Seattle Dexter Horton National Bank,* 162 Wash. 437, 299 Pac. 359, because they arose out of the same transaction or series of transactions, and presented common questions of law or fact. RCW 4.36.150 (7) authorizes joinder of claims against a trustee by virtue of a contract or by operation of law, and RCW 4.36.150 (8) authorizes joinder if arising out of the same transaction.

But joinder may be sustained on even a broader ground. Both causes of action are equitable in nature, and joinder of claims in equity has always been treated more liberally than in actions at law. Indeed, this court said in *Lindley v. McGlauflin,* 57 Wash. 581, 107 Pac. 355, that such joinder was desirable to avoid multiplicity of suits. Had the

actions been separately instituted, they might have been consolidated for the purpose of trial. No prejudice is shown, nor, in fact, even claimed. See, also, *Cooper v. Runnels, supra; Capital National Bank of Olympia v. Johns,* 170 Wash. 250, 16 P. (2d) 452; *Carlson v. Bogle,* 169 Wash. 528, 14 P. (2d) 42.

After the Columbia Pacific Company joined as a party plaintiff, a second amended complaint was filed which was verified only by the plaintiff Kane. Appellants assign error and claim that the verification of the plaintiff Kane was inadequate. There are two complete answers: First, RCW 4.36.010 requires verification by only one coparty; second, the assignment does not go to the merits, and Rule on Appeal 63, 34A Wn. (2d) 65, which is identical with and supersedes Rem. Rev. Stat., § 1752 [*cf.* RCW 4.88.280], requires this court to hear all causes on the merits and disregard technicalities and consider all amendments which could have been made, as made. Over fifty years ago, this court in *Smith v. Newell,* 32 Wash. 369, 73 Pac. 369, of this precise objection, said:

"It will therefore treat defects of this kind as amended, or, what is better, perhaps, disregard them."

The assignment is devoid of merit.

Several pages of defendants' brief are devoted to the argument that the insurance commissioner alone could determine the validity of defendant Klos' transfer to himself of 5,000 shares of voting stock of the corporation in violation of his fiduciary obligations. Assuming, for present purposes, that the legislature could do so without depriving the courts of their constitutional power, no statute vesting the insurance commissioner with such authority is cited. The rights and liabilities of the parties are exclusively for judicial determination.

Two assignments of error are made on the cross-appeal, but objection is raised to their consideration because the findings of fact are not set out in the brief as required by Rule on Appeal 43, *supra.* So far as material, the first finding assailed is:

"The Court therefore finds that defendant Klos shall return all but 2000 shares of common stock to Columbia Pacific Company."

So far as material, the other finding challenged is:

"The defendant Kloses were unjustly enriched in the sum of *$12,495.10,* and the said defendants are required to pay to the plaintiff Patrick Kane as assignee of the Schroeders the sum of *$12,495.10.*"

While labeled findings of fact, both, nevertheless, are but conclusions of law. Findings of fact are not made such by label or by commingling with findings of fact. A conclusion of law is a conclusion of law wherever it appears. *Grove v. Payne,* 47 Wn. (2d) 461, 288 P. (2d) 242; *Miller Lumber Company v. Holden,* 45 Wn. (2d) 237, 245, 273 P. (2d) 786; *Freeman v. Stemm Bros., Inc.,* 44 Wn. (2d) 189, 193, 265 P. (2d) 1055; *Hauser v. Arness,* 44 Wn. (2d) 358, 267 P. (2d) 691; *Wygal v. Kilwein,* 41 Wn. (2d) 281, 248 P. (2d) 893; *Bedgisoff v. Morgan,* 23 Wn. (2d) 737, 162 P. (2d) 238.

Conclusions of law need not be set out in the brief; and that applies to conclusions of law commingled with findings of fact under the label of findings of fact. While Rule on Appeal 43, *supra,* was not adopted until 1951, a similar rule prevailed in earlier years, and the court stated in *In re Seattle,* 26 Wash. 602, 67 Pac. 250, that the rule applied only to findings of fact and not to conclusions of law. In *Grove v. Payne, supra,* the same conclusion was reached under the present rule. One finding directed the return of all but 2,000 shares of the common stock, and the other that the defendant Klos was enriched in the sum of $12,495.10; both are but conclusions of law to which Rule on Appeal 43, *supra,* does not apply.

But even if the challenged conclusions of law were to be considered findings of fact, the assignments of error do copy the figures in the findings assailed, which in itself is a sufficient compliance with the rule. We recently had occasion to consider this problem in *In re Seattle,* 49 Wn. (2d) 247, 299 P. (2d) 843, and there said:

"In the case at bar, however, there is no dispute as to any facts except the ultimate fact consisting of the figure $69,-005.70, which was found by the trial court to be the just compensation for the property taken. *Thus, the city has literally complied with Rule 43 by setting out verbatim in its brief the only portion of finding No. 10 which it claims to be erroneous.*" (Italics ours.)

The court repeatedly found that in violation of his fiduciary obligations to the company and for the purpose of dominating and controlling it, Klos unlawfully issued to himself and wife 6,000 shares. The court found that the amount of the secret profit was $15,200. The conclusion that he return only 2,800 shares does not follow from the facts found. The conclusion that defendant Klos was unlawfully enriched in the sum of $12,495.10 does not follow from the facts found that the amount of the secret profit was $15,200. Findings of fact control inconsistent conclusions of law. *Ferris v. Blumhardt,* 48 Wn. (2d) 395, 293 P. (2d) 935; *Field v. Copping, Agnew & Scales,* 65 Wash. 359, 118 Pac. 329.

We come then to the merits of the cross-appeal. The evidence of the secret profit is so clear that the matter is free from doubt, and the findings are equally explicit. This was a suit in equity to require a faithless fiduciary to disgorge his ill-gotten gains. Public policy forbids compromise with a swindler. The fiduciary who engages in such conduct forfeits all right to compensation. Similar misconduct would be encouraged if the court, under such circumstances, temporized with the guilty. It must be made unmistakably clear that when one assumes the duties of a fiduciary, the law will exact of him not the best-policy kind of honesty, but "a punctilio of honor the most sensitive."

The American Law Institute in the Restatement, Agency, § 469, declares that the agent disobedient to his trust, forfeits his right to compensation.

"An agent is entitled to no compensation for conduct which is disobedient or is a breach of his duty of loyalty; such conduct, if constituting a wilful and deliberate breach of his contract of service, disentitles him to compensation for even properly performed services for which no compensation is apportioned."

See, also, Restatement, Trusts, § 243 (d); 2 Am. Jur. 235, § 299; 3 C.J.S. 77, § 182.

The secret profit was $15,200. There is no finding that Klos is entitled to any credit. However, the cross-appellants concede $17.50, and for that reason only, it may be deducted from the $15,200, for which amount the cross-appellants are entitled to judgment.

With respect to the 6,000 shares of stock illegally transferred by Klos to himself in violation of his fiduciary duty, the evidence, likewise, is clear. The finding that he was required to return only 2,800 shares is but a conclusion of law, and is inconsistent with the facts found and must, therefore, give way.

The trial court appropriately allowed other claims for the voting stock to be submitted to the company for its disposition. There is no apparent reason why Klos should not likewise be required to submit his claim, if any therefor, to the company.

The judgment requiring the return of but 2,800 shares is modified, and the trial court is directed to order the return of 3,800 shares for cancellation.

Upon the defendants' appeal, the judgment is affirmed. Upon the plaintiffs' cross-appeal, it is modified as indicated. Plaintiffs-respondents will recover costs.

HILL, C. J., SCHWELLENBACH, DONWORTH, and ROSELLINI, JJ., concur.