[No. 2143–2.   Division Two.   July 15, 1977.]

PORT TOWNSEND PUBLISHING COMPANY, INC., *Appellant,*
v. BASIL G. BROWN, ET AL, *Respondents.*

*Richard L. Shaneyfelt* and *McCune & Shaneyfelt,* for
appellant.

*William E. Howard, Prosecuting Attorney,* for respondents.

REED, J.—Plaintiff Port Townsend Publishing Company, Inc., appeals from a judgment absolving Jefferson County Commissioners Brown, O'Meara and Mercer from liability for alleged violations of the Open Public Meetings Act of 1971 (RCW 42.30). On appeal plaintiff assigns error to the trial court's interpretation of the Open Public Meetings Act of 1971 and further contends that the trial judge failed to enter findings of fact with respect to all material issues. We find no grounds for reversal, and accordingly the judgment of the trial court is affirmed.

On March 17, 1975, the Jefferson County Commissioners met in a regularly scheduled meeting. The meeting was to be open to the public, except for one item on the agenda, an appointment with Foster Beeson, local administrator of the federally funded CETA (Comprehensive Employment and Training Act)[1] program. Immediately prior to the discussions with Beeson, all members of the general public, including plaintiff's employee, newspaper reporter Korte Brueckmann, were asked to leave. The commissioners thereafter adjourned to a closed session, and no written or taped record was kept of the discussions with Beeson.

Port Townsend Publishing Company subsequently instituted an action against defendants, alleging violation of RCW 42.30.030, which provides:

> Meetings declared open and public. All meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter.

---

[1]The Comprehensive Employment and Training Act provides funds so that unskilled persons may participate in training programs consisting of on–the–job experience. To be eligible for CETA funds, a community must qualify as "depressed," meaning that it must have an unemployment rate in excess of 6 1/2 percent.

Pursuant to RCW 42.30.120,[2] plaintiff sought civil penalties of $100 against each defendant for knowingly violating the act. Defendants answered denying liability and contending that their conduct was within the exceptions enumerated in RCW 42.30.110,[3] which in relevant parts exempts from the open meetings requirement executive sessions held "to consider *matters affecting* . . . the appointment, employment, or dismissal of a public officer or employee". (Italics ours.) The trial judge found that the closed session involved a "discussion of the qualifications of various individuals in conjunction with the CETA program" and held that such action did not violate the provisions of the Open Public Meetings Act of 1971.

 We begin our discussion by first observing that the purpose of the Open Public Meetings Act of 1971 is set forth in RCW 42.30.010, which states:

Legislative declaration. The legislature finds and declares that all public commissions, boards, councils,

[2]RCW 42.30.120 provides:

"Violations—Personal liability—Penalty. Each member of the governing body who attends a meeting of such governing body where action is taken in violation of any provision of this chapter applicable to him, with knowledge of the fact that the meeting is in violation thereof, shall be subject to personal liability in the form of a civil penalty in the amount of one hundred dollars. The civil penalty shall be assessed by a judge of the superior court and an action to enforce this penalty may be brought by any person. A violation of this chapter does not constitute a crime and assessment of the civil penalty by a judge shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."

[3]RCW 42.30.110 provides:

"Executive sessions. Nothing contained in this chapter shall be construed to prevent a governing body from holding executive sessions during a regular or special meeting *to consider matters affecting* national security; the selection of a site or the acquisition of real estate by lease or purchase, when publicity regarding such consideration would cause a likelihood of increased price; *the appointment, employment, or dismissal of a public officer or employee;* or to hear complaints or charges brought against such officer or employee by another public officer, person, or employee unless such officer or employee requests a public hearing. The governing body also may exclude from any such public meeting or executive session, during the examination of a witness on any such matter, any or all other witnesses in the matter being investigated by the governing body." (Italics ours.)

committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.

The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

We also note the legislature has declared that the act is remedial and that its purposes are to be liberally construed. RCW 42.30.910. Our Supreme Court has further said that the legislative command to liberally interpret the act necessarily implies that its exceptions be narrowly confined. *Mead School Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 140, 530 P.2d 302 (1975).

Despite such a clear declaration of legislative purpose and intent, it is difficult for us to envision a broader exception than one which is couched in terms of "matters affecting," as in the case now before us. While we recognize that such terminology is susceptible of abuse in that it invites disputes over whether extremely remote events are properly denominated "matters affecting," we do not think that what occurred here requires a strained reading of that language to be within the statutory exception. The record indicates that the meeting with Beeson was held to discuss the availability of CETA funds for additional positions in Jefferson County. Commissioner Brown testified that the matters discussed ranged from CETA eligibility requirements and whether current CETA positions should be extended, to the possible promotion and dismissal of certain CETA employees and the allocation of CETA funds among the county departments. Brown further testified that at the conclusion of the meeting a decision was made to permit department heads to hire several applicants who

had previously been considered. All three commissioners stated that although specific employees' names were not mentioned, references to employment positions were sufficient identification of the individuals involved. It is our opinion that a decision to proceed with the hiring of several individuals to fill CETA positions, as well as discussions relating to the funding of CETA positions, CETA eligibility standards, the possible promotion and dismissal of current CETA employees, and the allocation of CETA funds, are properly deemed consideration of "matters affecting . . . the appointment, employment, or dismissal of a public . . . employee". RCW 42.30.110.

Aside from reaching what we consider to be a fair construction of the language used in our statute, we find further support for our interpretation in the policy considerations behind the exception, which seem to suggest that it not be overly restricted:

> Perhaps the most common exception pattern is the exclusion of proceedings related to personnel management. Actual exceptions here may range from specific hiring and firing decisions to a blanket exemption for all housekeeping matters. Where an individual's case is concerned, of course, respect for personal privacy is an important factor. But the main motivation behind these exclusions appears to be a feeling that government will operate far more efficiently if it is permitted to organize and staff itself in private. It is unrealistic to expect officials to be candid about prospective personnel in public because any criticism can take on an unintended personal tone. The interested citizen's "need to know" here is not so critical. He will have ample opportunity to judge the performance of his public officials, as long as he has adequate access to their official proceedings and actions.

(Footnotes omitted.) D. Wickham, *Let The Sun Shine In! Open–Meeting Legislation Can Be Our Key to Closed Doors in State and Local Government*, 68 Nw. U.L. Rev. 480, 485 (1973). Similar considerations are also expressed in Note, *Open Meeting Statutes: The Press Fights for the "Right to Know"*, 75 Harv. L. Rev. 1199 (1962).

■ Turning to plaintiff's challenge to the sufficiency of the findings entered by the trial court, we first note that the primary purpose of the findings of fact is to aid appellate courts in their review. *E.g., Mertens v. Mertens,* 38 Wn.2d 55, 227 P.2d 724 (1951). If the findings are ambiguous and vague or if they are incomplete, then the oral decision of the trial court may be used to aid interpretation of the findings and to help ascertain the underlying theory of the trial court's decision. *Hawaiian Ins. & Guar. Co., Ltd. v. Federated Am. Ins. Co.,* 13 Wn. App. 7, 534 P.2d 48 (1975). While in the instant case the findings by themselves are inadequate to fully explain the rationale of the trial court, we have no trouble discerning the underlying theory for the trial court's decision when we refer to the oral opinion in conjunction with the findings of fact. Under such circumstances, we find that any insufficiency in the findings of fact is not grounds for reversal.

The judgment of the trial court is affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied September 8, 1977.