# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Dependency of | No. 49737-9-II |
| A.Z.B. | |
| M.T. and A.B., | |
| Appellants, | |
| v. | |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — MT (Mother) and AB (Father), the parents of AZB,[1] appeal the juvenile court's determination that AZB was a dependent child.[2] The parents argue that the juvenile court erred in (1) concluding that AZB was dependent because there is insufficient evidence to support that conclusion and (2) ordering out-of-home placement because (a) the Department of Social and

---

[1] This court uses initials or pseudonyms in place of the juveniles' names and in place of the juveniles' parents' names for all appeals concerning juvenile dependency proceedings under chapter 13.34 RCW. Gen. Order 2006–1 of Division II, *In Re The Welfare of All Juveniles Found Dependent Under Chapter 13.34 RCW*, http://courts.wa.gov/appellate_trial_courts/.

[2] Mother's and Father's briefs are substantively identical. For clarity, we refer to Mother and Father collectively as "the parents."

Health Services (DSHS) did not make reasonable efforts to prevent the need for AZB's removal and (b) the juvenile court's finding that no parent was available to care for AZB was erroneous. We affirm in part and reverse in part. We remand for further proceedings.

FACTS

I. BACKGROUND

The parents of AZB both suffer from mental illness. The Father is diagnosed with paranoid schizophrenia. Mother has social anxiety, depression, and a history of self-harm and suicidal ideations.

AZB was born prematurely in August 2014. Doctors determined that Mother received insufficient prenatal care. AZB remained in the hospital for several days after his birth, and he received his initial vaccinations while in the hospital. The parents did not take AZB to his scheduled two-month checkup appointment, and they did not arrange for him to continue to receive his scheduled vaccinations.

Soon after AZB's birth, the parents moved next door to AZB's paternal grandmother, Dora Davis. Davis frequently looked after AZB, and the parents brought AZB to Davis's home any time they had a disagreement with each other.

Beginning in November, Davis took AZB to the Women, Infants, and Children Nutrition Program (WIC) office where he received nutrition assistance. Mother accompanied Davis to two or three of AZB's WIC appointments. Father never attended AZB's appointments, but he drove Mother and Davis to AZB's appointments on at least two occasions. Father asked that Mother and Davis stop taking AZB to the WIC office because he felt that the family did not need financial

2

assistance and because he was "not so fond of the medical side of society." 3 Report of Proceedings (RP) at 455.

Davis also took AZB to the doctor's office for a checkup and to receive vaccinations when he was 10 months old. AZB had not been to the doctor's office since he was two weeks old. Davis obtained paperwork to receive third-party custody of AZB, but she did not complete it.

On October 20, 2015, DSHS received a complaint of possible medical negligence from the WIC office. The WIC office reported that Davis was consistently late to AZB's appointments and that she was unable to provide proof of AZB's identification, vaccinations, or insurance coverage. The WIC office also noted that AZB was not regularly seen by a doctor and did not receive wellness checkups.

After receiving the WIC office's complaint, DSHS initiated an investigation. On October 23, DSHS social worker Jhanna Parker made an initial contact with Mother and AZB. Parker was able to meet with Mother at AZB's maternal grandmother's home. Mother reported that she had left with AZB and moved out of the home that she shared with Father after an argument. Mother also reported that she had an on-again, off-again relationship with Father.

During Parker's visit, AZB fell and hit his mouth on the corner of a table. Parker noted that Mother responded to AZB while he was in distress but that her actions and statements showed that she did not understand that AZB was bleeding from his mouth. Mother made a comment that she thought AZB had ketchup on his face, not understanding that AZB was bleeding from his fall. Mother told Parker that she had social anxiety and depression and that she had a history of self-harm and suicidal ideations. Mother also disclosed that on one occasion, she did not wake up until the late afternoon, leaving AZB without food, water, or supervision for several hours.

Parker arranged for another visit with Mother and AZB on October 29. At that time, Mother had moved back into her home with Father. When Parker arrived, the parents stated that they were sick and that AZB was next door with Davis. Parker was unable to arrange another home visit with the parents.

On November 20, DSHS held a family team decision meeting. At the meeting, Father reported that he had been diagnosed with paranoid schizophrenia and had "episodes." 1 RP at 90. The parents agreed to a voluntary placement order, placing AZB in the care of Davis.[3] Father then left the family team decision meeting and refused to return. At this point in DSHS's investigation, DSHS had decided that the WIC office's medical negligence claim was unfounded. However, DSHS filed a dependency petition on November 24 after determining that the parents were unable to meet AZB's needs.

## II. FACT-FINDING HEARING

The juvenile court held a fact-finding hearing in June 2016. At the fact-finding hearing, witnesses testified to the above facts. The parents also testified.

Father testified that he was first diagnosed with paranoid schizophrenia in 2012 after he was admitted to the hospital because he decided to stop eating and required medical attention. After his diagnosis, Father began seeing a psychiatrist and taking antipsychotic medications. Father discontinued his treatment because he believed that he had learned how to cope with his conditions independently. Father was unemployed as a result of his mental health conditions.

---

[3] DSHS later learned that Davis was permanently disqualified from serving as a foster parent because of a prior conviction. AZB was then placed with his paternal great aunt.

In 2015, a no-contact order was issued against Father, preventing him from contacting his daughter from a previous relationship due to neglect and nonperformance of parenting functions. Father noted that he believed AZB was current on all vaccinations and that he had missed only one doctor's appointment. Father also testified that he did not have concerns about how his diagnoses might affect AZB's wellbeing.

Mother testified that she was diagnosed with depression and social anxiety as a teenager and that she had been prescribed antidepressants. Mother stated that in January 2015, she walked along train tracks and contemplated jumping in front of an oncoming train. After this occasion, Mother sought treatment for her depression, but she did not continue her therapy. Mother was unemployed as a result of her mental health conditions.

Mother acknowledged that she had slept into the late afternoon, leaving AZB without food, water, and supervision for several hours. Mother stated that she did not have an alarm clock to ensure that she did not oversleep again and instead she hardly slept. Mother stated that she could safely parent AZB with her depression and that she used coping skills that she had learned in previous counseling sessions to manage her depression. Mother also testified that she believed AZB had not missed any of his doctor's appointments or vaccinations.

Parker testified that she recommended that Mother request services from the Washington Developmental Disability Administration, enroll in parenting classes, and begin counseling. Parker provided Father with a guide listing resources in his area, as well as information regarding parenting classes and mental health services. Parker testified that she offered these services to the parents multiple times but that the parents never engaged in DSHS' services. Parker also noted

5

that there was an "[i]ncreased risk for possible neglect and/or abuse and a lack of meeting [AZB's] basic needs" if AZB was returned to the parents. 1 RP at 94.

DSHS social worker Annastasia Sherman testified that she attempted to schedule multiple home visits with the parents after AZB had been removed from their care. Father contacted Sherman on multiple occasions and told her she was not welcome on his property and that he would call the police if she visited. Sherman also stated that, during a DSHS visitation, Father began yelling at her through a two-way mirror while pounding on the glass separating her from him. Sherman ultimately recommended that the parents receive mental health treatment, medical assessments, and parenting support. Sherman noted that the parents were unwilling to engage in DSHS' services, and they ultimately did not enroll in the services she had recommended. Sherman testified that neither Father nor Mother were safe and appropriate parents.

The parents underwent psychological evaluations with Dr. Landon Poppleton. At the fact-finding hearing, Dr. Poppleton testified that Father had paranoid schizophrenia and a possible intellectual disability. Dr. Poppleton stated that Father's conditions created a "prevalent" risk of psychological harm to AZB. 1 RP at 146. Dr. Poppleton continued,

> So, for example, paranoia and schizophrenia, where people have these hallucinations, they hear voices, they think people are out to get them, those, again, create an environment that makes the job of the child in terms of meeting those developmental milestones more difficult. . . .
> . . . [T]here was some documented support that I had relied on in this evaluation to indicate that there was a lot of chaos around the child in terms of fighting between the parents and pawning the child off onto a grandmother. . . .
> And so what's happening is you're just creating an environment that makes a child's task of meeting those milestones just more difficult. . . . There's just more of a risk of that happening.

1 RP at 145-46.

Dr. Poppleton testified that Mother had persistent depressive disorder, social anxiety, post-traumatic stress disorder (PTSD), and borderline intellectual functioning. Dr. Poppleton noted that Mother is "an individual who is in a tremendous amount of emotional turmoil," and he said he was worried about what the implications of her mental illnesses were because "[t]here [were] narratives that I had about the parties fighting and her fleeing the house, and, you know, her anxiety is associated with that." 1 RP at 161, 164.

Dr. Poppleton stated that he was "worried about the interactions between the different mental healths of the parents, the family chaos associated with that or as a product of that or in terms of interacting with that and the individual mental health of both parents." 1 RP at 198-99. Dr. Poppleton concluded that "the risk is higher, much higher for . . . something negative to happen." 1 RP at 153. As a result, Dr. Poppleton stated that intervention by a third party and mental health treatment were necessary to ensure the psychological wellbeing of AZB.

The juvenile court determined that AZB was a dependent child under RCW 13.34.030(6)(c). In its oral ruling, the juvenile court, relying on Dr. Poppleton's testimony, stated that Mother's deference to Father puts AZB's health at risk and that AZB was at substantial risk for harm if the parents do not seek mental health treatment and obtain support from a third party.

The juvenile court entered an order of dependency with findings of fact and conclusions of law. The findings stated in relevant part,

> 2.2 Facts:
> . . . .
> The Court found [AZB] Dependent under 13.34.030[(6)](c) based upon the following findings:
> [1] After the immunizations [AZB received at] birth, doctor's appointments and WIC appointments that [AZB] attended were scheduled by the paternal grandmother.

7

[2] [AZB] had missed some of his immunizations while he was in the care of his parents.

[3] While in his parent's care, [AZB] spent a significant amount of time in the care of his paternal grandmother.

[4] [Father's] psychological evaluation indicates that he suffers from paranoid schizophrenia. This leads to concerns that he may engage in severe emotional outbursts that would affect [AZB's] development.

[5] [Mother's] psychological evaluation indicates that she suffers from PTSD due to past sexual abuse, and persistent depressive disorder. Although undiagnosed, [Mother] also scored well below average in intelligence testing.

[6] [Mother] often [defers] to [Father].

[7] Both Parents love and care for their child.

2.3 Statutory Basis: . . . The child is dependent according to RCW 13.34.030, in that the child:

. . . .

(c) has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

2.4 Placement:

. . . .

. . . It is currently contrary to the child's welfare to return home . . . for the following reasons:

. . . there is no parent or guardian available to care for the child.

Clerk's Papers (CP) at 6-8. The juvenile court also stated in its "findings" that DSHS had made reasonable efforts to prevent the need for AZB's removal but that DSHS' efforts were unsuccessful because the health, safety, and welfare of AZB could not be adequately protected in the parents' home.

The parents appeal the trial court's dependency order.

ANALYSIS

I. RCW 13.34.030(6)(c) DEPENDENCY

The parents contend that there was insufficient evidence to support the juvenile court's findings and conclusion that AZB is a dependent child. Specifically, the parents argue that the

State failed to present any evidence that their mental health conditions affected their parenting or rendered them incapable of caring for AZB. We disagree.

## A. SUFFICIENT EVIDENCE OF DEPENDENCY

### 1. CHARACTERIZATION OF DEPENDENCY DETERMINATION

Mother and Father assign error to finding 2.3 entered by the juvenile court and argue that sufficient evidence does not support the juvenile court's determination that AZB is dependent. As a threshold matter, we address whether the juvenile court's determination that AZB is a dependent child is a finding of fact or conclusion of law.

It is well established that the labels used by a trial court to distinguish findings of fact versus conclusions of law are not controlling. We will consider factual findings and legal conclusions for what they are even though they may be mislabeled as a finding or a conclusion. *Kane v. Klos*, 50 Wn.2d 778, 788, 314 P.2d 672 (1957) (findings of fact are not made such by label or by commingling conclusions of law with findings of fact); *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) (if the trial court mislabels a finding or legal conclusion, this court considers it for what it really is). "'If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact.'" *Goodeill v. Madison Real Estate*, 191 Wn. App. 88, 99, 362 P.3d 302 (2015) (quoting *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978)), *review denied*, 185 Wn.2d 1023 (2016). However, "'if a determination is made by a process of legal reasoning from, or interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law.'" *Goodeill*, 191 Wn. App. at 99 (quoting *Moulden & Sons, Inc.*, 21 Wn. App. at 197 n.5).

In the order of dependency, under a heading entitled "Findings," item 2.3 states in relevant part,

> 2.3 Statutory Basis: . . . The child is dependent according to RCW 13.34.030, in that the child:
> . . . .
>> . . . (c) has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

CP at 8.

This "finding" is actually a conclusion of law because it provides a determination of the child's status under RCW 13.34.030(6)(c) based on the evidence presented at the hearing. *See Goodeill*, 191 Wn. App. at 99. While "finding" 2.3 does not itself include the juvenile court's basis for concluding that AZB is dependent, the previous "finding" 2.2 provides that "[t]he Court found [AZB] Dependent under 13.34.030[(6)](c) based upon the following findings" and then lists seven facts based on evidence supporting the parents' incapacity to care for AZB. CP at 7. As such, "finding" 2.3 was made by a process of legal reasoning based on facts in evidence and is properly considered as a conclusion of law. *See Goodeill*, 191 Wn. App. at 99; *Kane*, 50 Wn.2d at 788.

2.    SUFFICIENCY OF THE EVIDENCE

Next, we address whether sufficient evidence supports the conclusion that AZB is a dependent child. First, we look to whether substantial evidence supports the findings of fact; then we turn to whether those findings support the juvenile court's conclusions of law. *In re Dependency of E.L.F.*, 117 Wn. App. 241, 245, 70 P.3d 163 (2003).

a.    PRINCIPLES OF LAW

A dependency hearing is a fact-finding inquiry, the purpose of which is to determine whether the State can meet its burden of showing that the child is dependent as defined by statute. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 582-83, 257 P.3d 522 (2011).

We review a claim of insufficient evidence in a dependency case to determine whether substantial evidence supports the juvenile court's findings of fact and whether those findings support the juvenile court's conclusions of law. *E.L.F.*, 117 Wn. App. at 245. Evidence is substantial when, viewed in the light most favorable to the prevailing party, a rational trier of fact could find the fact in question by a preponderance of the evidence. *E.L.F.*, 117 Wn. App. at 245. Preponderance of the evidence means "more likely than not to be true." *In re Dependency of M.S.D.*, 144 Wn. App. 468, 478, 182 P.3d 978 (2008).

To declare a child dependent, the juvenile court must find by a preponderance of the evidence that the child meets one of the statutory definitions of dependency. RCW 13.34.110(1). Under RCW 13.34.030(6)(c), a child is dependent when the child "[h]as no parent . . . capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." A dependency determination under RCW 13.34.030(6)(c) does not require proof of actual harm, only a danger of harm. *In re Dependency of Schermer*, 161 Wn.2d 927, 951, 169 P.3d 452 (2007). A juvenile court has broad discretion in determining when a danger of harm exists. *Schermer*, 161 Wn.2d at 951.

A child may not be found dependent merely because his parents are mentally ill. *In re Dependency of T.L.G.*, 126 Wn. App. 181, 203, 108 P.3d 156 (2005). However, "[a] parent's

mental illness may support a finding of dependency when it interferes with parenting ability."

*Schermer*, 161 Wn.2d at 945.

      b.      Substantial Evidence Supports the Findings of Fact

We first examine whether substantial evidence supports the juvenile court's written

findings of fact. *E.L.F.*, 117 Wn. App. at 245. The juvenile court's findings state in relevant part,

> 2.2 Facts:
> . . . .
> The Court found [AZB] Dependent under 13.34.030[(6)](c) based upon the following findings:
> [1] After the immunizations [AZB received at] birth, doctor's appointments and WIC appointments that [AZB] attended were scheduled by the paternal grandmother.
> [2] [AZB] had missed some of his immunizations while he was in the care of his parents.
> [3] While in his parent's care, [AZB] spent a significant amount of time in the care of his paternal grandmother.
> [4] [Father's] psychological evaluation indicates that he suffers from paranoid schizophrenia. This leads to concerns that he may engage in severe emotional outbursts that would affect [AZB's] development.
> [5] [Mother's] psychological evaluation indicates that she suffers from PTSD due to past sexual abuse, and persistent depressive disorder. Although undiagnosed, [Mother] also scored well below average in intelligence testing.
> [6] [Mother] often [defers] to [Father].
> [7] Both Parents love and care for their child.

CP at 6-8.

Substantial evidence from the dependency hearing supports findings of fact 1, 2, and 3,

namely that the paternal grandmother scheduled doctor's appointments and WIC appointments,

that AZB had missed some of his immunizations while he was in the care of his parents, and that

AZB spent a significant amount of time in the care of his paternal grandmother. At the fact-finding

hearing, testimony established that the parents did not take AZB to his wellness checkups or

vaccination appointments. AZB was frequently in Davis's care, and Davis later arranged for

AZB's medical and WIC appointments. Father even asked Davis to stop taking AZB to his WIC appointments because he was "not so fond of the medical side of society." 3 RP at 455.

In addition, evidence from the hearing supports findings of fact 4, 5, and 6 regarding the parents' mental illnesses. The hearing included testimony that Father had been diagnosed with paranoid schizophrenia and that Mother had persistent depressive disorder, social anxiety, PTSD, and borderline intellectual functioning. The parents stated that they did not seek employment because of their conditions. Father also had a no-contact order issued against him preventing him from contacting his other child because of neglect and nonperformance of parenting functions. The parents had both received mental health treatment, but each declined to continue treatment. Dr. Poppleton noted that the parents' mental health conditions and the chaos surrounding their home and relationship created an environment that made AZB's ability to reach developmental milestones much more difficult. Dr. Poppleton concluded that there was a high risk of harm to AZB's psychological development and stated that third party intervention and mental health treatment were necessary to ensure AZB's wellbeing. Moreover, Dr. Poppleton testified that AZB was at risk of being in an unstable or unhealthy environment because of how much Mother defers to Father.

These facts support the finding that Father's paranoid schizophrenia "leads to concerns that he may engage in severe emotional outbursts that would affect [AZB's] development." CP at 8. In addition, these facts support that "[Mother's] psychological evaluation indicates that she suffers from PTSD due to past sexual abuse, and persistent depressive disorder. Although undiagnosed, [Mother] also scored well below average in intelligence testing." CP at 8. And Dr. Poppleton's testimony supports that "[Mother] often [defers] to [Father]." CP at 8.

13

Viewed in the light most favorable to the prevailing party, the trial court's findings of fact are supported by a preponderance of the evidence. *E.L.F.*, 117 Wn. App. at 245.

c.      CONCLUSIONS OF LAW

We turn to whether the written findings of fact support the conclusion that AZB is dependent because he "has no parent, guardian or custodian capable of adequately caring for" him, such that his psychological or physical development are in substantial danger. CP at 8.

The findings of fact show that the parents failed to provide AZB with medical and other custodial care to support his health and wellbeing, which in turn supports the conclusion that he has no parent capable of adequately caring for him. The parents failed to schedule doctor's appointments and WIC appointments for AZB. AZB missed some of his immunizations while he was in the care of his parents. While in his parents' care, AZB spent a significant amount of time in the care of his paternal grandmother. These findings of fact support the conclusion that the parents were not capable of adequately caring for AZB.

In addition, the juvenile court's findings regarding the parents' mental health issues and AZB's resulting risks support the juvenile court's conclusion of AZB's dependency. A child may not be found dependent merely because his parents are mentally ill. *T.L.G.*, 126 Wn. App. at 203. The parents' mental illnesses "may support a finding of dependency when it interferes with parenting ability," but findings that the parents are mentally ill are not *alone* sufficient to support that AZB was dependent. *Schermer*, 161 Wn.2d at 945.

The written findings support that Father's mental illness impacted his parenting ability. Specifically, the juvenile court made a written finding that "[Father's] psychological evaluation indicates that he suffers from paranoid schizophrenia. *This leads to concerns that he may engage*

*in severe emotional outbursts that would affect [AZB's] development.*" CP at 8 (emphasis added). Thus, the juvenile court specifically found that the father's mental illness impacted his ability to effectively parent AZB in such a way that AZB's development would be negatively impacted by Father.

However, while the juvenile court found that Mother suffers from several mental health issues, the juvenile court made no written finding that Mother's mental illnesses impacted her parenting ability. In the absence of a written finding on a particular issue, an appellate court may look to the oral opinion to determine the basis for the trial court's resolution. *In re Marriage of Booth*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990). If findings are ambiguous and vague or if they are incomplete, oral decision of the trial court may be used to aid interpretation of the findings and to help ascertain the underlying theory of the trial court's decision. *Port Townsend Publ'g Co. v. Brown*, 18 Wn. App. 80, 85, 567 P.2d 664 (1977).

Here, because the written findings fail to address Mother's ability to parent, the findings are incomplete, so we may look to the juvenile court's oral decision to understand the juvenile court's reasoning and determine whether sufficient evidence supports the juvenile court's conclusion. *See Port Townsend Publ'g Co.*, 18 Wn. App. at 85.

The juvenile court's oral ruling was based on "the testimony of the witnesses who have testified, as well as the exhibits that were admitted into evidence, . . . which I have reviewed in their entirety." 3 RP at 490. After discussing Mother's diagnoses for depressive disorder, social anxiety, unspecified schizophrenia spectrum and/or psychotic disorder, and learning or intellectual disability, the judge stated,

> [Dr. Poppleton] discussed some of the concerns he sees in that relationship [between Mother and Father], and that [Mother] very much *defers* to [Father] and *what he wants*.

> The court saw that during the course of this trial and through the testimony . . . that, at times, [Mother] *seemed very willing to do things but wanted to check with [Father] and then never got back or followed up.*
>
> And Dr. Poppleton indicated that that *puts [AZB] at risk for the risks that exist because of some of the issues that [Mother] faces, as well as adding on the risk factors from [Father]*, and the risk of subjecting herself to an *unstable or unhealthy environment because of how much she defers to [Father].*
>
> Dr. Poppleton also noted that [Mother] clearly loves [AZB], that [AZB] loves her, and that she is very attentive to him in what he observed; although, he also had some concerns about reports as to what had happened at other visitations, and whether she always was able to meet all of [AZB's] day-to-day needs.
>
> . . . .
>
> . . . But the testimony is, and Dr. Poppleton's testimony is, that [AZB] is at *substantial risk for harm* if the parents don't, one, seek active treatment for their significant issues, and, two, that even with that, that they *cannot function and parent* [AZB] *without substantial support from a third party*, and that that would have to exist.
>
> . . . .
>
> . . . [T]oday, I find that [AZB] does not have a parent capable of adequately caring for him such that [AZB] would be in circumstances constituting a danger of substantial damage to his psychological or physical development, and I find him dependent as to both parents.

3 RP at 510-13.

The juvenile court's oral findings relying on Dr. Poppleton's testimony clarify that Mother's mental health interfered with her ability to adequately parent AZB. *See Booth*, 114 Wn.2d at 777; *Port Townsend Publ'g Co.*, 18 Wn. App. at 85. The oral findings show that Mother's mental illnesses combined with her deference to Father created an unstable and unhealthy environment in which Mother did not pursue services to support AZB.

A juvenile court has broad discretion in determining whether a danger of harm exists in a dependency case and need not wait for actual harm to occur. *Schermer*, 161 Wn.2d at 951. Dr. Poppleton's testimony made it clear that without the parents receiving mental health treatment and third-party intervention, there was a high risk of harm to AZB's psychological development, and AZB would have more difficulty reaching developmental milestones. DSHS social workers also

noted that there was an increased risk that AZB would be neglected or abused if the parents remained untreated. And the record shows that the parents had not sought treatment, despite numerous opportunities to do so.

We conclude that the findings of fact support the trial court's conclusion of law that AZB is dependent because he "has no parent, guardian or custodian capable of adequately caring for" him, such that his psychological or physical development are in substantial danger. CP at 8. Because substantial evidence supports the trial court's findings of fact, and the findings of fact support the trial court's conclusions of law, we hold that sufficient evidence supports the trial court's dependency determination. *E.L.F.*, 117 Wn. App. at 245.

## II. OUT-OF-HOME PLACEMENT

The parents also argue that the juvenile court erred in ordering out-of-home placement because (1) the juvenile court's finding that no parent was available to care for AZB was erroneous and (2) DSHS did not make reasonable efforts to prevent the need for AZB's removal. We hold that the "no parent available" finding was proper, but we also hold that the trial court's conclusion that reasonable efforts were made to prevent an out-of-home placement is unsupported by any findings. Accordingly, we reverse the out-home-placement order and remand for further proceedings.

If a child has been proven dependent by a preponderance of the evidence, the juvenile court may order either that the child remain in the home with the parents or be placed outside the home. RCW 13.34.130. RCW 13.34.130(5)(a) provides that a juvenile court may order out-of-home placement if it finds that "[t]here is no parent or guardian available to care for such child" and "reasonable efforts have been made to prevent or eliminate the need for removal of the child."

17

We review a juvenile court's placement decision in a dependency proceeding for an abuse of discretion. *In re Dependency of A.C.*, 74 Wn. App. 271, 275, 873 P.2d 535 (1994). The juvenile court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *In re Welfare of R.S.G.*, 172 Wn. App. 230, 243, 289 P.3d 708 (2012).

## A. AVAILABLE PARENT

First, the parents argue that the juvenile court erred in ordering out-of-home placement because its finding that no parent was "available" to care for AZB was erroneous. Specifically, the parents argue that they were "available" under the plain meaning of RCW 13.34.130(5)(a) because they were "available and willing" to serve as AZB's placement. Br. of Appellant (Father) at 14; Br. of Appellant (Mother) at 14. Because the parents' mental illness interfered with their ability to adequately care for AZB, we affirm the juvenile court's conclusion that there was no parent "available" to care for AZB.

Whether AZB's parents were "available" under RCW 13.34.130(5)(a) involves statutory interpretation of the term "available," which is a question of law we review de novo. *Birgen v. Dep't of Labor & Indus.*, 186 Wn. App. 851, 857, 347 P.3d 503, *review denied*, 184 Wn.2d 1012 (2015). When interpreting a statute, our objective is to ascertain and give effect to the legislature's intent. *Birgen*, 186 Wn. App. at 857. If a statute is unambiguous, we apply the statute's plain language as an expression of legislative intent and do not consider other sources of such intent. *Birgen*, 186 Wn. App. at 857-58. However, if a statute is susceptible to multiple reasonable interpretations, the statute is ambiguous. *Birgen*, 186 Wn. App. at 858. When a statute is ambiguous, we may rely on statutory construction, legislative history, and relevant case law to determine the legislature's intent. *State v. Rice*, 180 Wn. App. 308, 313, 320 P.3d 723 (2014).

When a term is not defined by statute, we may look to the dictionary to give it meaning. *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015).

The term "available" is not defined by ch. 13.34 RCW. Accordingly, we may look to its dictionary definition. *Nissen*, 183 Wn.2d at 881. "Available" is defined as "capable of use for the accomplishment of a purpose," "immediately utilizable," and "that is accessible or may be obtained." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 150 (2003).

The parents argue that the term "available" in RCW 13.34.130(5)(a) is plain and unambiguous. However, the dictionary definitions of the term "available" show that the term is subject to multiple reasonable interpretations. Because an available parent may be "capable of use for the accomplishment of a purpose" or "immediately utilizable," the term "available" may refer to a parent who is able to take on the responsibility of parenting or a parent who is merely presently physically accessible. WEBSTER'S, *supra*, 150. Accordingly, RCW 13.34.130(5)(a) is ambiguous, and we look to statutory construction, legislative history, and relevant case law to determine and give effect to the legislature's intent. *Rice*, 180 Wn. App. at 313.

A child may not be ordered to out-of-home placement unless he is found to be dependent. RCW 13.34.130. A child is dependent under RCW 13.34.030(6) if he has been abandoned, is abused or neglected, or has no parent capable of adequately caring for him. In making these determinations,

> the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail.

RCW 13.34.020.

It is well established that the best interests of the child are the juvenile court's paramount concern when placing a dependent child. *In re Welfare of Ca.R.*, 191 Wn. App. 601, 610, 365 P.3d 186 (2015). While parents have a fundamental liberty interest in the care and welfare of their child, DSHS has the right and responsibility to intervene and protect the child when the parent's deficiencies jeopardize his physical or mental health. *Schermer*, 161 Wn.2d at 941. As a result, "[t]he primary purpose of a dependency proceeding is for the court to order remedial measures to promote family unity and to alleviate the problems that caused the State's intervention." *In re Dependency of A.N.*, 92 Wn. App. 249, 251-52, 973 P.2d 1 (1998).

Looking to the statutory scheme of RCW 13.34.130(5)(a) and relevant case law, an "available" parent is more than a parent who is "immediately utilizable" and physically accessible. WEBSTER'S, *supra*, 150. Instead, an available parent must be able to provide for a child's "basic nurture, physical and mental health, and safety." RCW 13.34.020. As a result, a parent is not "available" under RCW 13.34.130(5) if he or she has deficiencies that jeopardize the child's physical or mental health and safety.

The juvenile court concluded that "[i]t is currently contrary to the child's welfare to return home . . . for the following reasons: . . . there is no parent or guardian available to care for the child." CP at 8. As discussed above, the evidence presented at the fact-finding hearing demonstrated that the parents were unable to provide for AZB's physical or mental health and safety because their untreated mental illnesses created a risk of danger to AZB's physical and psychological wellbeing. The parents did not bring AZB to wellness checkups or vaccination appointments, their mental illnesses created a chaotic environment that is harmful to child development, the mother failed to recognize the extent of AZB's injury and left AZB unattended

for a substantial period of time, and the father was prone to angry outbursts. Based on these facts, they were deemed unsafe and inappropriate parents by DSHS, and ultimately the juvenile court agreed. As a result, the parents are not "available" parents within the meaning of RCW 13.34.130(5)(a).

## B. REASONABLE EFFORTS

Next, the parents argue that the juvenile court erred in ordering out-of-home placement because DSHS did not make "reasonable efforts" to prevent the need for AZB's removal. Br. of Appellant (Father) at 15; Br. of Appellant (Mother) at 16. And the parents argue that the juvenile court's findings and evidence do not support a conclusion that AZB's health, safety, and welfare could not be adequately protected in the home such that reasonable efforts to keep AZB in the home were not required. We agree with the parents.

### 1. PRINCIPLES OF LAW

"When placing a child, 'the best interests of the child are the court's paramount concern.'" *Ca.R.*, 191 Wn. App. at 610 (quoting *In re Dependency of R.W.*, 143 Wn. App. 219, 223, 177 P.3d 186 (2008)). Each case is fact specific, so no exact criteria exists for determining the child's best interests. *Ca.R.*, 191 Wn. App. at 610.

Discretionary placement decisions are reviewed for an abuse of discretion. *Ca.R.*, 191 Wn. App. at 610. "'A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.'" *Ca.R.*, 191 Wn. App. at 610 (quoting *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993)). "A decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard." *In re Dependency of T.L.G.*, 139 Wn. App. 1, 15-16, 156 P.3d 222 (2007).

The juvenile court may order out-of-home placement

only if the court *finds that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home* and to make it possible for the child to return home, *specifying the services*, including housing assistance, *that have been provided* to the child and the child's parent, guardian, or legal custodian, *and that preventative services have been offered or provided* and have failed to prevent the need for out-of-home placement, unless the health, safety, and welfare of the child cannot be protected adequately in the home, and that:
    (a) There is no parent or guardian available to care for such child;
    . . . .
    (c) The court finds, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger.

RCW 13.34.130(5) (emphasis added).

2.    ABUSE OF DISCRETION

Here, the juvenile court stated in its "finding" 2.5 that DSHS had made reasonable efforts to prevent the need for AZB's removal but that DSHS' efforts were unsuccessful because the health, safety, and welfare of AZB could not be adequately protected in the parents' home. Even though this statement is labeled as a "finding," it is a conclusion of law because it is a determination that the statutory standard for an out-of-home placement under RCW 13.34.130(5) has been met: "finding" 2.5 parrots the statutory standard for making an out-of-home placement by stating that DSHS made "reasonable efforts to prevent or eliminate the need for removal of the child from the child's home" but that those efforts were unsuccessful because "[t]he health, safety, and welfare of the child cannot be adequately protected in the home." CP at 9. Since "finding" 2.5 is apparently intended to be a determination of whether the statutory standard to render an out-of-home placement is satisfied in the particular case, it is intended to be a determination made by a

process of legal reasoning from facts in evidence. Therefore, it is a conclusion of law. *Goodeill*, 191 Wn. App. at 99.

The trial court failed to articulate any written or oral findings of fact to support its conclusion that DSHS made "reasonable efforts" to prevent or eliminate the need for removal from the home. "'A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.'" *Ca.R.*, 191 Wn. App. at 610 (quoting *Kovacs*, 121 Wn.2d at 801). "A decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard." *T.L.G.*, 139 Wn. App. at 15-16.

Here, the juvenile court failed to make any findings regarding DSHS' efforts to offer or provide services, which means the juvenile court failed to make the requisite findings under RCW 13.34.130(5) supporting "*that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home* and to make it possible for the child to return home, *specifying the services*, including housing assistance, *that have been provided* to the child and the child's parent, guardian, or legal custodian, *and that preventative services have been offered or provided.*" (Emphasis added.)

Under RCW 13.34.130(5), the juvenile court does not need to find that DSHS made reasonable efforts to prevent the need to remove AZB from the home if it determines that his "health, safety, and welfare . . . cannot be protected adequately." And the juvenile court did conclude that DSHS' "efforts were unsuccessful because . . . [t]he health, safety, and welfare of the child cannot be adequately protected in the home." CP at 9. But again, the juvenile court's conclusory statement is unsupported by any findings of fact showing that AZB's health, safety, and welfare were at risk *unless* he received an out-of-home placement.

23

Because the juvenile court's out-of-home placement was unsupported by findings of fact, its decision is "'based on untenable grounds.'" *Ca.R.*, 191 Wn. App. at 610 (quoting *Kovacs*, 121 Wn.2d at 801). As such, the juvenile court abused its discretion when it made the out-of-home placement without providing the necessary findings of fact.

We affirm the juvenile court's conclusion that AZB is a dependent child, but we reverse the out-of-home placement order and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

LEE, J.