**FILED**
**NOVEMBER 5, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Dependency of | ) | No. 36532-8-III |
| | ) | (consolidated with |
| O.V.H. | ) | No. 36533-6-III) |
| | ) | |
| _____ | ) | |
| In re Dependency of | ) | UNPUBLISHED OPINION |
| | ) | |
| E.J.H. | ) | |
| | ) | |

LAWRENCE-BERREY, C.J. — A mother appeals the trial court's determination that her two youngest children are dependent. Because substantial evidence supports the trial court's findings, and because those findings support the trial court's conclusion of dependency under RCW 13.34.030(6)(c), we affirm.

FACTS

In 2016, Kalyn[1] and Sean[2] were married and living together. Kalyn's young daughter, O.V.H., also lived with them. O.V.H.'s father is incarcerated for rape of a

---

[1] Because the record is sealed to protect the identity of minors, we use the first names of adult relatives and the initials of their children to ensure the minors' anonymity.

[2] The transcript spells the father's name "Shawn," but pleadings spell his name "Sean." Believing the latter is correct, we spell his name "Sean."

child.  Kalyn has two twin children, A.H. and E.H.  The twins are older than O.V.H. and lived with Kalyn, Sean, and O.V.H every other week.

In August 2016, A.H. and E.H. told Kalyn that Sean had been molesting them. Kalyn obtained a confession from Sean.  Sean was arrested and released on bail.

In September 2016, Stacy Foster, a Child Protective Services (CPS) social worker with the Department of Children, Youth and Family Services (the Department), received an intake regarding Kalyn, A.H., E.H., and O.V.H.  This first intake was regarding Sean's sexual abuse of Kalyn's twin daughters.  Sean admitted to Ms. Foster to abusing the children on multiple occasions.

The next month, Ms. Foster received a second intake because of allegations of negligent treatment by Kalyn, allegations that Kalyn was abusing pills, and allegations that Kalyn allowed Sean back into the home.  Kalyn denied the allegations.  Kalyn told Ms. Foster that she was not sure she wanted to leave Sean and she relied on him financially and was supporting him through his treatment.  Kalyn also told Ms. Foster that Sean would not do it again and that it was a one-time thing and he was getting help.  Ms. Foster believed that Kalyn did not understand the risk Sean posed to her children and recommended she participate in individual counseling.  Kalyn agreed, provided she could choose the counselor.

2

Kalyn chose to go to individual counseling with Lindsey Vaagen, a mental health therapist. After an initial assessment, Ms. Vaagen recommended that Kalyn participate in individual counseling services. Ms. Vaagen counseled Kalyn for about six months. Ms. Vaagen diagnosed Kalyn with adjustment disorder—a clinical disorder that usually shows symptoms of racing thoughts, anxiety, and difficulty sleeping and concentrating. Kalyn began learning how to set boundaries with Sean so as to move forward in their relationship. During this time, Kalyn became pregnant. Kalyn's insurance stopped paying for counseling, and Kalyn stopped participating. Ms. Vaagen believed that Kalyn was still experiencing symptoms of adjustment disorder and she needed more individual counseling.

In May 2017, Sean pleaded guilty to two counts of child molestation. The court revoked bail and Sean remained in jail pending sentencing.

In July 2017, Timothy Bernhardt, a mental health professional, evaluated Sean to determine whether he qualified for treatment under a special sex offender sentencing alternative (SSOSA) and, if so, what treatment was required. The evaluation revealed Sean's prior use of pornography, including an instance of child pornography, an instance of bestiality, and multiple other instances of minor female sexual contacts. Sean also disclosed that he had molested his biological daughter. This occurred prior to Sean and

Kalyn's marriage, when Sean's daughter was around seven or eight years old. Mr.

Bernhardt diagnosed Sean with a deviant arousal to prepubescent females, distorted

thinking in terms of sexuality with children, an addiction to pornography, and pedophilic

disorder. He classified Sean as having a moderate risk for reoffending.

Mr. Bernhardt contacted Kalyn and told her what Sean had disclosed during the

evaluation. Kalyn was shocked that Sean had repeatedly molested her twins. She also

said she was unaware that Sean had molested his own biological daughter.

In August 2017, Sean received a SSOSA sentence with community-based

treatment. The sentence prohibited Sean from having unsupervised contact with anyone

under the age of 18. Supervised contact was permitted, provided the supervisor was both

aware of Sean's offending conduct and was approved by the Department of Corrections

and Sean's therapist. The Department of Corrections monitored Sean's compliance with

his sentencing conditions by polygraph every six months.

In October 2017, Kalyn gave birth to E.J.H., a daughter. Sean is the father of

E.J.H. The Department assigned Sylvia Zarate, a CPS investigator, to O.V.H. and E.J.H.

Prior to E.J.H.'s birth, Kalyn used methamphetamine and heroin and was prescribed

suboxone to help reduce addiction withdrawals and cravings. Part of Ms. Zarate's job

was assessing child safety and determining whether a child was safe under a parents'

care. When Ms. Zarate met with Kalyn, she stated that E.J.H. was the product of a one-time thing with Sean and that she had no plans to get back together with him. Yet, Sean told Ms. Zarate that Kalyn called him every night. During her investigation of the case, Ms. Zarate received reports that Kalyn was allowing unknown and unauthorized individuals to stay in her home and there was concern about criminal activity there. Kalyn denied anyone was living there at first. Later, Kalyn requested help to remove Keith Cope from her home—an individual she allowed to live there.

In the spring of 2018, Ms. Zarate received a report that Kalyn let a friend take A.H., E.H., and O.V.H. to the park for an Easter egg hunt, and Kalyn's friend left the children at the park. Kalyn's friend was not authorized by the Department to supervise the children. Abigail Dean, who sometimes babysat the children, found the children in the park without an adult.

In April 2018, the Department filed a dependency petition for O.V.H. and E.J.H. The Department's reasons for filing the petition were that Kalyn failed to follow multiple safety plans, failed to engage in substance abuse treatment consistently, missed random urinalysis, was dishonest about who was in her home, and the Department's attempts to address these issues had failed.

At the shelter care hearing, the Department recommended that Kalyn engage in a drug and alcohol assessment, random urinalysis tests, and a mental health assessment. Kalyn agreed to these recommendations. Soon after the shelter care hearing, O.V.H. and E.J.H. were placed with Sean's parents. Kalyn also moved in with Sean's parents. In May 2018, Sean completed the jail portion of his SSOSA sentence.

In June 2018, Sean stipulated that E.J.H. was a dependent child. In August 2018, O.V.H.'s father similarly stipulated. Kalyn contested that her two youngest children were dependent. A dependency trial occurred in November 2018.

Testimony at trial largely focused on whether Kalyn could set appropriate boundaries to protect her two youngest children from the risk of Sean reoffending. Because Kalyn assigns error to 11 of the trial court's 31 findings of fact, we discuss the testimonies in some detail.

A.  WITNESSES HELPFUL TO KALYN'S POSITION

Kalyn, O.V.H. and E.J.H. lived with Sean's parents for several months prior to the dependency trial. Sean's parents are Karen and David.

Karen testified that O.V.H. and E.J.H. were healthy and well taken care of. If Sean was allowed future visitations, Karen thought they would set boundaries such as no diaper changes, no bathing the children, no going into their rooms, and not being alone with

them.  She believed these boundaries were a practical way to keep Sean from reoffending because those kinds of things Kalyn usually did and Sean would not want to do them. Karen testified that if the Department was no longer involved, they could make sure the children would be safe and Sean would never be alone with them.  She envisioned everybody living under the same roof in the future.

David also testified that O.V.H. and E.J.H. were doing well in their home.  David said he would be capable of setting boundaries with his son Sean.  He described the boundaries as requiring Sean to complete his sex offender counseling, he could not be alone with the children, and he could not change their diapers.  David testified that the family could keep O.V.H. and E.J.H. safe without the Department being involved.

Pastor Scott Liddell testified that he had provided counseling to Kalyn and Sean, including marriage counseling.  They discussed setting boundaries and Mr. Liddell believed Kalyn was capable of setting appropriate boundaries.

Kalyn testified that she had no plans for a relationship with Sean.  Instead, she said her priority would be to take care of her children, keeping them safe, setting boundaries, and getting through school and treatment.  Kalyn testified that the boundaries she would set for Sean would be no unsupervised contact with the children, no being alone in the same room with the children, no giving them baths, no changing diapers or clothes, and

no wrestling with them. She also said there was no way to prevent Sean from reoffending again.

John Colson provided sex offender treatment to Sean. At the time of trial, Sean had just progressed beyond the first phase of treatment, stabilization, and started the second phase, prevention of reoffending. Mr. Colson twice met with Kalyn, both times with Sean. Mr. Colson found Kalyn to be assertive and doing what she needed to do. Mr. Colson testified that he believed Kalyn was capable of setting boundaries and keeping O.V.H. and E.J.H. safe.

Mr. Colson admitted he had not worked with Kalyn on relationship issues with Sean or worked with her on how to have a safe household and to monitor her children and Sean. He outlined the skills he could provide Kalyn in individual counseling: identifying risky situations, how to keep her children safe, and what to look for in a high-risk situation with a partner. He testified he had not worked on a relapse prevention plan with Sean or Kalyn. He explained that Sean had not reached that part of treatment and that he would not work on such a plan until he believed the family was ready to reunite.

Mr. Colson believed that the counseling and monitoring required by Sean's SSOSA sentence would be similar if not more stringent than counseling and monitoring provided by a dependency order. Partly for this reason, he did not believe that a

dependency order was necessary. Mr. Colson did not explain how he could require Kalyn to engage in and complete counseling outside of a dependency order.

B.     WITNESSES HELPFUL TO THE DEPARTMENT'S POSITION

The Department assigned Mary Flores, a social worker, to the case. Ms. Flores was not concerned about Kalyn's parenting, but worried about her ability to keep her children safe. Ms. Flores believed Kalyn was not capable of setting boundaries with Sean because of her continued contact with him. Ms. Flores's involvement in the case ended in July 2018.

Joseph Villanueva, a social worker with the Department, was assigned to O.V.H. and E.J.H.'s case. Mr. Villanueva recommended individual counseling for Kalyn. Mr. Villanueva testified that counseling would help Kalyn with her adjustment disorder, would give her insight to how her romantic relationship with Sean affected the children, and would help her keep the children safe. This was important to Mr. Villanueva for two reasons. First, Sean stated in his polygraph that he was romantically involved with Kalyn since his release from jail in May 2018. Second, Kalyn minimized the risk that Sean posed to the children and told him that Sean would never do it again. Mr. Villanueva believed that Kalyn was not capable of safely parenting O.V.H. and E.J.H. because of her

ongoing minimization of what happened, her inability to understand the risks posed by Sean, and her romantic relationship with Sean.

Taylor Kennedy provided counseling to Kalyn through the Incredible Years program. The Incredible Years program helps improve parents' relationships with their children by showing them nonviolent discipline strategies and teaches parenting skills and how to manage behavior. Throughout the program, Ms. Kennedy continued to have concerns about Kalyn's relationship with Sean. Kalyn minimized Sean's risk to the children by mistakenly saying that Sean was a low risk offender. Ms. Kennedy was concerned about the children's safety if Kalyn and Sean's romantic relationship continued. Although Kalyn informed Ms. Kennedy of the boundaries she would set with Sean, Ms. Kennedy believed it would be nearly impossible to maintain those boundaries while being in a romantic relationship with someone or living with someone.

Dulce Morales was the guardian ad litem for O.V.H. and E.J.H. She testified it was in the best interests of O.V.H. and E.J.H. to find them dependent because there was a high risk of Sean being around the children and because Kalyn could not yet set specific boundaries. She believed that Kalyn needed to receive additional counseling to enable her to set specific boundaries. She emphasized that outside of a dependency, the needed counseling could not be required.

C.     TRIAL COURT'S DECISION

The trial court entered written findings that specifically found: Sean is addicted to child pornography and has a sexual attraction to prepubescent females, Kalyn minimized the extent of Sean's predatory behavior, Kalyn's proposed boundaries are not practical, Kalyn, Karen, and David have a poor understanding of the dynamics of Sean's crime, and Kalyn has a lack of insight to the peril posed by Sean to O.V.H. and E.J.H. The court also found that Kalyn, Karen, David, and Mr. Colson were unable to provide specific boundaries that would adequately address the risk posed by Sean. The court did not find Kalyn or Sean credible about their professed indecision of a future relationship, but instead found that they planned on Sean reunifying with Kalyn and her two youngest children. The court was unpersuaded by Mr. Colson's testimony that Kalyn was capable of setting appropriate boundaries.

The trial court determined that Kalyn's lack of insight into the safety risk posed by Sean made her incapable of adequately caring for and protecting O.V.H. and E.J.H. such that the children are in danger of substantial damage to their psychological or physical development. It thus concluded that O.V.H. and E.J.H. were dependent under RCW 13.34.030(6)(c).

Kalyn timely appealed to this court. We granted accelerated review, and the case was submitted without oral argument.

ANALYSIS

FINDING OF DEPENDENCY

Kalyn challenges 11 of the trial court's 32 findings of fact. She also challenges the trial court's legal conclusion that O.V.H. and E.J.H. are dependent under RCW 13.34.030(6)(c). We first address the challenged findings of fact and then address the challenged legal conclusion.

GENERAL PRINCIPLES

"'A parent's right to control and to have the custody of [her] children is a fundamental civil right which may not be interfered with without the complete protection of due process safeguards.'" *In re Dependency of K.N.J.*, 171 Wn.2d 568, 574, 257 P.3d 522 (2011) (quoting *Halsted v. Sallee*, 31 Wn. App. 193, 195, 639 P.2d 877 (1982)). In Washington, termination of parental rights is a three-step process. *Id.* at 576. First, there must be a hearing to determine if the child is dependent under RCW 13.34.030(6). *Id.* Second, the Department orders remedial measures to alleviate any problems that prompted the State's intervention. *Id.* Finally, in order to terminate the parent-child relationship, the State must prove all six elements under RCW 13.34.180(1) and show

12

termination is in the best interests of the child under RCW 13.34.190(1)(b). *Id.* at 576-77.

This case involves review of the first step in the process—whether O.V.H. and E.J.H.

were dependent under RCW 13.34.030(6).

In order to make a finding of dependency, a trial court must find the child meets a

statutory definition of "dependent" under RCW 13.34.030(6)(a)-(c). *Id.* at 576. Here, the

trial court found dependency under RCW 13.34.030(6)(c). RCW 13.34.030(6)(c) defines

a "dependent child" as

> any child who:
>      . . . .
>      (c) Has no parent, guardian, or custodian capable of adequately
> caring for the child, such that the child is in circumstances which constitute
> a danger of substantial damage to the child's psychological or physical
> development . . . .

"When evaluating evidence to determine whether a child is dependent, trial courts

have broad discretion and considerable flexibility to reach 'a decision that recognizes

both the welfare of the child and parental rights.'" *In re Dependency of Ca.R.*, 191 Wn.

App. 601, 608, 365 P.3d 186 (2015) (internal quotation marks omitted) (quoting *In re*

*Dependency of Schermer*, 161 Wn.2d 927, 952, 169 P.3d 452 (2007)). On appeal, the

proper review is to determine whether substantial evidence supports the trial court's

findings of fact and whether those findings support the conclusions of law. *Id.* Evidence

is substantial if, when viewed in the light most favorable to the prevailing party, a rational

13

trier of fact could find the fact by the applicable standard of proof: preponderance of the evidence. *In re Dependency of E.L.F.*, 117 Wn. App. 241, 245, 70 P.3d 163 (2003). The appellate court does not reweigh evidence or assess credibility. *Ca.R.*, 191 Wn. App. at 609.

THE CHALLENGED FINDINGS

*Finding of Fact 2.2.14*:

Kalyn challenges a small portion of finding of fact 2.2.14 that finds Sean is addicted to child pornography. Kalyn argues that Sean admitted in the SSOSA evaluation to being addicted to pornography and having watched child pornography 10 years ago. We agree with Kalyn. Sean never admitted to being addicted to child pornography and there is no evidence to support this finding.

*Finding of Fact 2.2.17*:

Kalyn challenges the entire finding of fact 2.2.17, which reads: "The Mother minimized the extent of her husband's predatory behavior, beginning in at least the Fall of 2016 when Mother told CPS Investigator Staci Foster that she intended to continue her relationship with the Father shortly after he had molested her children." Sealed Clerk's Papers (CP) at 531, 1189.

14

There was substantial evidence presented at trial to support this finding. Kalyn minimized Sean's predatory behavior beginning a few weeks after the incident when she let him back into the home. When confronted about it, Kalyn told Ms. Foster that Sean will not do it again and it was a one-time thing. Kalyn's minimization of Sean's actions continued even after she learned A.H. and E.H. were not his first victims—that he confessed to Mr. Bernhardt that his own biological daughter was his first victim.

In July 2018, Kalyn told Mr. Villanueva that Sean would never do this again and it was a one-time thing. While doing the Incredible Years program, Kalyn stated to Ms. Kennedy that she believes Sean is a low risk offender. Kalyn also admitted that she believes there is no way to prevent Sean from reoffending. There was substantial testimony presented at trial that Kalyn minimized Sean's predatory behavior—calling it a one-time thing even though it has happened more than once, stating he will never do it again, and admitting there is no way to prevent him from reoffending, yet continuing to have a relationship with him.

*Findings of Fact 2.2.18, 2.2.19*:

Kalyn challenges the entire finding of fact 2.2.18, which reads: "The Court did not find Mother or Father credible with regard to their indecisiveness about the future of their

relationship. The Court found that Mother ultimately plans to cohabitate with Father and [E.J.H.] and [O.V.H.]." Sealed CP at 531, 1189.

She also challenges a portion of finding of fact 2.2.19, which reads: "However, the Court did not find this persuasive." Sealed CP at 531, 1189.

There was substantial evidence that Kalyn planned to reunite the family with Sean. One month after Sean admitted to molesting A.H. and E.H., Kalyn let Sean back into the home. Kalyn told Ms. Foster that she was not sure she wanted to leave Sean and she relied on him financially. Kalyn continued to have contact with Sean after his arrest. Sean told Ms. Zarate that Kalyn called him every night. Sean and Kalyn were romantically involved since he was released from jail. They were receiving marriage counseling from their church pastor Mr. Liddell. Karen also envisioned everyone living under the same roof. Any rational trier of fact could have reasonably inferred that Kalyn and Sean planned to reunite and cohabitate with O.V.H. and E.J.H.

We decline to address Kalyn's other challenges to the finding of fact 2.2.18 and her challenge to the portion of finding of fact 2.2.19. These findings were credibility determinations made by the trial court. The appellate court does not reassess credibility. *Ca.R.*, 191 Wn. App. at 609.

*Findings of Fact 2.2.20, 2.2.21, 2.2.22*:

Kalyn challenges multiple findings related to ability to propose and implement appropriate boundaries to protect the children from Sean.

First, she challenges the entire finding of fact 2.2.20, which reads: "The Court found that testimony regarding boundaries that would keep Father from victimizing these children were nonspecific and supported Mother's continued minimization of Father's crimes." Sealed CP at 531, 1190.

Second, Kalyn challenges the entire finding of fact 2.2.21, which reads:

> Mother unreasonably believes that Father's predatory nature could be curbed through boundaries, which would prevent victimizing Mother's children. The Court found Mother's proposed boundaries such as[:] not letting Father change diapers; not allowing Father in children's bedrooms; and supervising all his contact with the children; were found not practical, but instead fanciful.

Sealed CP at 532, 1190.

Finally, Kalyn challenges the entire finding of fact 2.2.22, which reads: "Mother, placement, nor Father's current SSOSA counselor, John Colson were able to provide specific boundaries that would address the safety risk posed by Father." Sealed CP at 532, 1190.

There was substantial evidence presented at trial for a rational trier of fact to find that Kalyn's proposed boundaries were nonspecific, not practical, and would not address

17

the safety risk posed by Sean. Mr. Colson testified that he believed Kalyn was capable of setting boundaries but gave no testimony about what those boundaries should be or how to enforce them. Mr. Colson also said that he has yet to develop a relapse prevention plan with Sean. Mr. Liddell also stated he believes Kalyn is capable of setting boundaries but gave no more specific explanation of those.

Karen testified that Sean's boundaries would be no changing diapers, no bathing the children, no going into their rooms, and no being alone with them. She stated it was a practical way to keep Sean from reoffending because those are the kinds of things the mother usually does anyway, and Sean would not want to do those things in the first place. David testified that Sean must complete his sex offender counseling, he cannot be alone with the children, and he cannot change their diapers. Kalyn testified to similar boundaries: no unsupervised contact, no bathing the children, no changing diapers, no changing clothes, and no wrestling with the children.

Kalyn relayed these boundaries to Ms. Kennedy during the Incredible Years program. However, in Ms. Kennedy's opinion, those boundaries would be nearly impossible to maintain while romantically involved with someone or residing with that person.

We conclude there was substantial evidence for the trial court to find the boundaries proposed by Kalyn were nonspecific, impractical, and would not address the risk posed by Sean.

*Findings of Fact 2.2.25, 2.2.26, 2.2.28*:

Kalyn challenges multiple findings that she lacked insight to the danger posed by Sean to the children.

First, Kalyn challenges the entire finding of fact 2.2.25, which reads: "Mother's unwillingness to realize the danger posed to the children by Father, rendered the two [children] dependent." Sealed CP at 532, 1190.

Second, Kalyn challenges the first half of finding of fact 2.2.26, which reads: "Mother lacks insight into peril posed by Father where the above named children are in the same demographic as Father's previous and preferred victims." Sealed CP at 532, 1190. Kalyn does not challenge the second half of the finding: "Mother believes there is no way to prevent Father from reoffending, but she would be willing to take the chance." Sealed CP at 532, 1190.

Next, Kalyn challenges the entire finding of fact 2.2.28, which reads: "Mother's lack of insight into the safety risk posed by Father makes her incapable [of] adequately

caring and protecting her children such that the children are in danger of substantial damage to their psychological or physical development." Sealed CP at 532, 1191.

A rational trier of fact could make the aforementioned findings. Mr. Villanueva testified that Kalyn needed counseling to understand how her relationship with Sean could affect the children and to understand the risks Sean poses. Ms. Kennedy echoed that opinion.

Kalyn's inability to recognize the danger Sean poses to the children is evident in her continued minimization of Sean's actions. As found and supported in finding of fact 2.2.17, Kalyn continuously minimized Sean's actions. Even though the SSOSA evaluation revealed that Sean had once engaged in bestiality and repeated sexual contact with prepubescent children, Kalyn continued her relationship with Sean and desires reunification. She characterized Sean as a low risk offender even though the evaluation concluded Sean was a moderate risk to reoffend. She continued to state that Sean would not do it again, even after the SSOSA evaluation found Sean had a deviant arousal to prepubescent females. O.V.H. and E.J.H. are prepubescent females. Sean already molested A.H. and E.H., prepubescent females. Yet, Kalyn wants reunification and does not recognize the threat.

Possibly the most glaring evidence of Kalyn's lack of insight is the trial court's uncontested finding 2.2.26: "Mother believes there is no way to prevent Father from reoffending, but she would be willing to take the chance." Sealed CP at 532, 1190. Kalyn's desire to reunite the family at the possible peril of her own children is fatal evidence of her inability to recognize the dangers and to adequately protect her children.

*Finding of Fact 2.2.27*:

Kalyn challenges the entire finding of fact 2.2.27, which reads: "The Court found that Mother may be able to gain insight as to the risk posed by the Father by working with a counselor." Sealed CP at 532, 1190.

The evidence at trial supports this finding. Mr. Villanueva testified that individual counseling would help Kalyn with her adjustment disorder, would give her insight about how her relationship with Sean could affect the children, and how she could keep the children safe. Although Kalyn had completed counseling with Ms. Taylor, it is evident that she still lacked necessary insight on the dangers posed by Sean.

THE CHALLENGED LEGAL CONCLUSION

Kalyn contends the trial court erred by determining that O.V.H. and E.J.H. were dependent under RCW 13.34.030(6)(c). As noted above, a dependent child under that subsection is one who "[h]as no parent, guardian, or custodian capable of adequately

21

caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c).

Kalyn argues she realizes the risk that Sean poses, will take substantial steps to prevent future abuse, and although Sean may be a bad choice for a partner, it is an insufficient reason for the State to interfere with her family. In making this argument, she relies on *In re Dependency of M.S.D.*, 144 Wn. App. 468, 182 P.3d 978 (2008).

In *M.S.D.*, the mother of a seven-year-old child lived with her boyfriend, who was convicted of assault and criminal mistreatment of his own infant child 10 years earlier. The trial court found the child dependent based on former RCW 13.34.030(5)(b) (2003), now RCW 13.34.030(6)(b). That provision defines a dependent child as one who is "abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child." RCW 13.34.030(6)(b). We reversed the finding of dependency because substantial evidence did not show that the boyfriend's old conviction constituted a clear and present danger to M.S.D. We held evidence that a parent had lived for several years with a partner who had a prior conviction of assaulting his or her infant child was insufficient, by itself, to establish that the mother's child had been neglected within the meaning of former RCW 13.34.030(5)(b). There, the boyfriend had not physically abused

M.S.D. or any other child during the period of cohabitation, the mother was able to protect M.S.D., and the mother understood the seriousness of her boyfriend's prior conviction.

*M.S.D.* is distinguishable. First, the trial court here found O.V.H. and E.J.H. dependent on a different subsection of RCW 13.34.030(6). Second, the boyfriend in *M.S.D.* had not physically harmed one of the mother's children. Here, Sean repeatedly molested Kalyn's prepubescent twin daughters. Third, the boyfriend in *M.S.D.* had not recently assaulted a child. Here, Sean recently molested Kalyn's twin daughters. Fourth, the mother in *M.S.D.* understood the seriousness of her boyfriend's crimes and was capable of protecting her child. Here, Kalyn minimized the seriousness of Sean's crimes and is not capable of protecting her children.

The parties do not contest that if Sean were to sexually molest O.V.H. or E.J.H., it would result in "substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c). The only issue is whether the young children are in "circumstances which constitute a danger" of being molested. RCW 13.34.030(6)(c).

Here, Sean has molested prepubescent children multiple times, is classified as a moderate risk for reoffending, and has yet to complete SSOSA treatment. Despite their testimonies, the trial court found that Kalyn and Sean intend for the family to reunite. In

the recent past, Kalyn has denied that people who should not be living with her were living with her. Her minimization of the risk that Sean poses to her young children, and her need for additional counseling, poses an unnecessary risk that she might permit Sean to spend time with her and her young children. And even though she plans to supervise Sean at all times, this simply is not practical. These are circumstances that constitute a danger that the children could be molested. For these reasons, we affirm the trial court's determination of dependency under RCW 13.34.030(6)(c).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.