IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of R.O., | ) | No. 80339-5-I |
| | ) | |
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| R.O. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |

HAZELRIGG, J. — R.O. appeals the denial of his motion for revision of an order authorizing his 14-day involuntary commitment under RCW 71.05.240. He argues that the court's finding that he was gravely disabled was not supported by substantial evidence, particularly in light of the lack of evidence of his conduct and ability to care for himself prior to his contact with police. We disagree and hold the trial court's denial of the motion for revision was proper as the finding of grave disability under the statute and order of commitment based on the symptoms R.O. continued to exhibit prior to the hearing are supported by substantial evidence. We affirm.

## FACTS

Seattle Police Officer Bryan Asher encountered R.O. in July 2019 while on duty. Asher witnessed R.O. dancing in the street in a high traffic area and was

forced to brake in order to avoid striking R.O. Asher asked R.O. to move out of the street, but R.O. continued to dance and call out "Jesus." The officer had to physically move R.O. out of the street, but once he did so, R.O. remained where Asher placed him. Asher noted R.O. was speaking in both Spanish and English, but did not seek language assistance to communicate with R.O. Believing R.O. was in a mental health crisis, Asher took R.O. to the emergency room at Swedish Cherry Hill.

While at the emergency room, R.O. frequently yelled out "Jesus," responded to internal stimuli, had a difficult time focusing, and sporadically clapped and laughed to himself. R.O. reported that he walked into the street intending to harm himself because he was feeling weak in his faith and it was the "devil's work." R.O. also indicated he had not been sleeping, but denied drug use; he explained "it is mostly the word of the Lord." The staff noted that R.O. had abrasions on his chest, shoulders, and abdomen, but R.O. was unable to coherently explain how he got the abrasions. R.O.'s urinalysis was positive for amphetamine, methamphetamine, and MDMA.[1] Later that morning, R.O. was detained for a maximum of 72 hours under Washington's Involuntary Treatment Act (ITA).[2]

R.O. was transferred to Navos Inpatient Services (Navos) for mental health treatment the following day. The State filed a petition for an additional 14 days of involuntary treatment, alleging R.O. was "gravely disabled" due to a mental disorder. A hearing on the petition was held wherein the State clarified it was proceeding under subsection (a) of RCW 71.05.020(22). The State presented

---

[1] 3, 4-Methylenedioxymethamphetamine
[2] Ch. 71.05 RCW.

testimony from Asher, Swedish Medical Center evaluator Erica Williams, and Navos mental health counselor Kassandra Sparkmon.

At the hearing, Asher testified about his interaction with R.O. in the street. Williams provided testimony explaining that the hospital physician described R.O.'s behavior when admitted as "bizarre," including suicidal ideations, and related to methamphetamine use. She also noted that R.O. was pleasant and calm at times while in the emergency room.

Sparkmon opined that R.O. suffered from a mental disorder with a working diagnosis of unspecified schizophrenia spectrum disorder and other psychotic disorder. Sparkmon identified the numerous symptoms observed in R.O. by various care providers that she believed demonstrated this mental disorder. Sparkmon further testified that her opinion was R.O.'s mental disorder created a danger of serious harm to him based on a failure or inability to care for his essential needs of health and safety. Sparkmon indicated that, while at Navos, R.O. was at various times selectively mute, isolative, and observed laying in the middle of a hallway floor. She stated R.O. denied the need for mental health treatment, but was generally medically compliant while at Navos.

Both Williams and Sparkmon testified that they did not find any documented history of medical or mental health admissions or diagnoses for R.O. Sparkmon testified that there were notes in R.O.'s chart that referenced his past ability to access food and shelter through YouthCare and that he sometimes worked odd jobs and used the money to buy food. Sparkmon stated that his future access to

these resources was not confirmed and she maintained her opinion that he would not be able to meet his essential needs.

The court commissioner found R.O. suffered from a mental disorder and was gravely disabled under the applicable statute because R.O. was in danger of serious physical harm resulting from a failure to provide for his essential needs of health and safety. The commissioner found that a less restrictive alternative was not in R.O.'s interest. The court ordered R.O. remanded into the custody of Navos for a period of inpatient treatment not to exceed 14 days.

R.O. moved for revision of the commissioner's commitment ruling before a judge in the superior court. The commissioner's findings and conclusions were preserved via a standard check-box style form, but also incorporated the oral findings in the record of the hearing by reference. The judge hearing R.O.'s motion for revision adopted the findings of the commissioner and incorporated them in the order denying the motion. R.O. timely appeals the denial of his motion for revision.

## ANALYSIS

R.O. argues the State failed to present sufficient evidence that he was gravely disabled and that, as a result, his 14-day commitment order should be vacated. As a preliminary matter, R.O. argues that his case is not moot, despite the fact that the 14-day involuntary commitment has long since been completed. The State does not argue that the case is moot. We will address the merits of R.O.'s challenge.

A commissioner's actions are subject to revision by a superior court judge. RCW 2.24.050. "On revision, the superior court reviews the commissioner's

findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner." In re Welfare of Ca.R., 191 Wn. App. 601, 607, 365 P.3d 186 (2015). Once a superior court has decided the motion for revision, as was done here, we focus our review on the superior court's decision as opposed to the commissioner's original order. Faciszewski v. Brown, 187 Wn.2d 308, 313 n.2, 386 P.3d 711 (2016). Here, the superior court denied the motion for revision and adopted the commissioner's findings of fact and conclusions of law as its own.

When reviewing an involuntary commitment order, this court's inquiry is "whether substantial evidence supports the findings and, if so, whether the findings in turn support the [superior] court's conclusions of law and judgment." In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). "Accordingly, we will not disturb the trial court's findings of 'grave disability' if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." Id. As the challenger of the findings, R.O. bears the burden of establishing that the findings are not supported by substantial evidence. In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998).

"In general, an individual may be involuntarily committed for mental health treatment if, as a result of a mental disorder, the individual either (1) poses a substantial risk of harm to him or herself, others, or the property of others, or (2) is gravely disabled." In re Det. of M.K., 168 Wn. App. 621, 630, 279 P.3d 897 (2012); RCW 71.05.240. In R.O.'s case, the basis for commitment was that he was gravely disabled. RCW 71.05.020(22) defines gravely disabled as follows:

> "Gravely disabled" means a condition in which a person, as a result of a mental disorder, or as a result of the use of alcohol or other

psychoactive chemicals: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety[.]

Here, the State proceeded under the (a) prong which the superior court eventually ruled was established by a preponderance of the evidence. See A.S., 91 Wn. App. at 163.

When the State alleges an individual's mental disorder renders them gravely disabled under prong (a), "the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." LaBelle, 107 Wn.2d at 204-05.[3] In explaining its ruling on the order of commitment, the commissioner specifically noted that a recent unpublished case[4] from Division Two of this court analyzed LaBelle and suggested that mere access to food and shelter may not demonstrate the respondent's ability to provide for themselves and maintain personal safety.

Though R.O. draws alternative conclusions from the testimony and emphasizes the evidence that he presented at the 14-day commitment hearing, we find substantial evidence exists for the superior court's findings and conclusions. Evidence was presented that R.O. suffered from a mental disorder

---

[3] LaBelle addressed former RCW 71.05.020(1), which our legislature eventually recodified as RCW 71.05.020(22) without substantive changes.

[4] In re Det. G.T., No. 50572-0-II (Wash Ct. App. Feb. 6, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050572-0-II%20Unpublished%20Opinion.pdf.

with a working diagnosis of unspecified schizophrenia spectrum and other psychotic disorder. This finding is supported by Sparkmon's testimony, wherein she explained that this working diagnosis was based on R.O.'s "responding to internal stimuli, disorganized speech, blunted affect, religious preoccupation, suicidal ideation, confusion, auditory hallucinations, delusions, lack of need for sleep, and impaired insight, impulse control and judgment."

At the 14-day commitment hearing and now on appeal, R.O. focuses his argument on the State's failure to demonstrate that his conduct was due to an underlying mental illness as opposed to his drug use. R.O. reinforces this argument by emphasizing the lack of any evidence of R.O.'s conduct or condition prior to his interaction with Asher. R.O. avers this failure to establish a baseline for whether or not R.O. was adequately providing for his essential human needs is fatal to the State's case. In Labelle, the Supreme Court held that when the State proceeds under the gravely disabled standard, it "must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." Labelle, 107 Wn.2d at 204-05. Proving an individual is gravely disabled under prong (a) does not necessarily require prior knowledge of the individual's lifestyle, but instead recent tangible evidence of failure to provide for essential human needs. Id. Here, the State properly focused on the recent evidence that during R.O.'s commitment, when he was not under the influence of non-prescribed

drugs, many mental health symptoms persisted despite his general compliance with some aspects of treatment.

The court's findings are supported by substantial evidence that while at the hospital, R.O. was at times isolative, selectively mute, and exhibited unusual behavior such as laying in the hallway. Sparkmon admitted that R.O. seemed to be improving while at the hospital, but though he was medically compliant, he did not recognize the need for treatment. Though R.O. now argues that we should reweigh the evidence or consider it in another light, our scope of review does not permit for such an inquiry. Reviewing the record in its entirety, the court's findings for R.O's 14-day commitment are supported by substantial evidence as established in the testimony of the responding care providers and involved officer.

Affirmed.

WE CONCUR:

- 8 -